**The document below is hereby signed.**

**Dated: September 20, 2011.**



_____
**S. Martin Teel, Jr.**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

```
In re                          )
                               )
COLUMBIA HOSPITAL FOR WOMEN    )   Case No. 09-00010
MEDICAL CENTER, INC.,          )   (Chapter 11)
                               )
              Debtor.          )
_____)
                               )
COLUMBIA HOSPITAL FOR WOMEN    )
MEDICAL CENTER, INC.,          )
                               )
              Plaintiff,       )   Adversary Proceeding No.
                               )   09-10010
         v.                    )
                               )   Not for Publication in
NCRIC, INC.,                   )   West's Bankruptcy Reporter
                               )
              Defendant.       )
```

<u>MEMORANDUM DECISION</u>

The plaintiff, Columbia Hospital for Women Medical Center, Inc. ("Columbia Hospital"), commenced this adversary proceeding by the filing of a complaint seeking payment, in accordance with section 542(b) of the Bankruptcy Code (11 U.S.C.), of amounts due to it under a judgment entered against NCRIC, Inc. ("NCRIC") in the original amount of $18,220,002, plus interest and costs, by the Superior Court of the District of Columbia on or about

February 20, 2004, and affirmed by the District of Columbia Court

of Appeals (the "NCRIC Judgment").  Pursuant to a consent order

entered in Columbia Hospital's bankruptcy case, NCRIC has turned

over to Columbia Hospital all amounts due under the NCRIC

Judgment except for $239,044.33 as to which NCRIC has claimed a

right of setoff.  In support of its right of setoff, NCRIC points

to a judgment against Columbia Hospital that it obtained from

Jackson & Campbell by way of an assignment made in conformance

with D.C. Code § 28-2301.  In response, Columbia Hospital

contends that NCRIC has no such right of setoff because (1) no

mutuality of obligations exists between Columbia Hospital and

NCRIC; (2) the assignment to NCRIC of the Jackson & Campbell

judgment (the "J&C Judgment") was champertous; (3) NCRIC has

waived its right of setoff; (4) NCRIC's right of setoff, if it

exists, is inferior in priority to the liens of other secured

creditors; and (5) NCRIC's setoff claim should be denied in the

exercise of the court's equitable discretion because NCRIC

acquired the J&C Judgment merely as a litigation tactic to gain

an advantage in Columbia Hospital's civil action against NCRIC.

To address the issue of setoff, the only remaining issue in

this adversary proceeding, the parties agreed that the matter

would be tried without witnesses.  They submitted, as an agreed

2

trial record, stipulated facts and exhibits,[1] then submitted

trial briefs, and then appeared before the court on November 24,

2009, to present oral argument regarding the findings of fact and

conclusions of law warranted by the agreed trial record.

The determination of NCRIC's right of setoff, a claim

against the estate, goes to the distribution of the res, the

estate of the debtor, being administered by this court.

Accordingly, this is a paradigmatic core proceeding, both in the

statutory sense, because it falls within 28 U.S.C.

§ 157(b)(1), and in the constitutional law sense regarding what

core issues in a bankruptcy system may be heard and decided by an

Article I bankruptcy judge instead of an Article III judge.  In

any event, the parties have consented to the court's hearing and

determining the matter.[2]

For the reasons that follow, I conclude that NCRIC's right

of setoff is a valid secured claim.

_____

[1]  The parties reserved their respective rights (i) to argue
the weight and relevance of these stipulated facts and exhibits,
and (ii) to argue for further factual inferences or conclusions
therefrom.  The parties also reserved the right to request that
the Court take judicial notice of any pleadings or papers in the
bankruptcy case of Columbia Hospital or in this adversary
proceeding.

[2]  The parties agreed that this is a core proceeding, and
the consent order regarding the trial procedures indicated that
each party's opening brief would "list the additional factual
findings that such party wishes the Court to make based upon the
facts stipulated by the parties."

I

A

*Stipulated Findings of Fact*

1.  Columbia Hospital is a District of Columbia
not-for-profit corporation and is the debtor and debtor in
possession in the above-indicated bankruptcy case.  Columbia
Hospital owned and operated Columbia Hospital for Women, which
was chartered by the United States Congress in 1866 to provide
health care and medical services to women and infants.  The
Columbia Hospital for Women operated from 1866 until it closed in
2002.

2.  NCRIC is a District of Columbia corporation having its
principal place of business at 1115 30th Street, NW, Washington,
DC 20007.  NCRIC provides medical malpractice insurance to
physicians in the District of Columbia and is not in the business
of acquiring or purchasing claims.

3.  This Court has jurisdiction over this adversary
proceeding pursuant to 28 U.S.C. §§ 157 and 1334.  The claim set
forth in the Amended Complaint of Columbia Hospital for Women
Medical Center, Inc. pursuant to Section 542(b) of the Bankruptcy
Code for Payment of Judgment Against NCRIC, Inc. is a core matter
within the meaning of 28 U.S.C. § 157(b)(2)(A), (B) and (E).

4.  On October 2, 2000, NCRIC filed a lawsuit against
Columbia Hospital in the Superior Court of the District of

4

Columbia (Case No. 2000-CA-007308-B) seeking approximately $1.3 million in damages for alleged failure to pay premiums under its insurance contract (the "NCRIC Litigation").  Columbia Hospital, represented by Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C. ("Kellogg Huber"), responded with counterclaims for, among other things, breach of contract and tortious interference with business relations.

5.  Columbia Hospital became unable to continue operations in 2002.  The Boards of Directors of Columbia Hospital and Columbia Hospital for Women Foundation, Inc., a District of Columbia non-profit corporation (the "Foundation") and the sole member of Columbia Hospital, therefore determined at a joint board meeting held on May 3, 2002 that it would be in the best interests of Columbia Hospital and the community it served that Columbia Hospital cease admissions and effectuate an orderly winding-up of its operations. Michael M. Barch and Robin C. Newton were appointed by the Board of Directors of Columbia Hospital and the Foundation to serve as liquidating trustees of Columbia Hospital.

6.  By September 26, 2002, Columbia Hospital had ceased operations and had sold its real property, including its hospital facility as well as medical equipment, and had announced that the proceeds from the sale of those assets would be employed to pay its creditors with any remainder being distributed to a nonprofit

group to be determined later.

7.    After Columbia Hospital filed its counterclaims in the NCRIC Litigation, NCRIC, on or about October 9, 2002, filed a motion to "enlarge" the time for discovery in the NCRIC Litigation.

8.    NCRIC's motion was denied by the Superior Court on or about April 2, 2003.

9.    On or about June 5, 2003, NCRIC also filed a "motion to require defendant to provide security for costs" in which it urged the court in the NCRIC Litigation to require Columbia Hospital to post security in the amount of $35,000 to cover costs in the NCRIC Litigation.  This motion was denied by the court in the NCRIC Litigation by order entered on October 7, 2003.

10.    On or about July 10, 2003, counsel for NCRIC sent a letter to counsel for Columbia Hospital in which, among other things, NCRIC proposed settling the NCRIC Litigation.

11.    Columbia Hospital responded by letter dated August 5, 2003, rejecting NCRIC's proposal to resolve the case.

12.    NCRIC then filed a motion on August 20, 2003, to join Michael Barch and Robin Newton, the Liquidating Trustees of Columbia Hospital, as parties to the NCRIC Litigation.

13.    The Superior Court denied NCRIC's motion to join Mr. Barch and Dr. Newton as parties on October 6, 2003.

14.    As of October 6, 2003, Jackson & Campbell P.C.

("Jackson & Campbell") held an unsecured judgment against Columbia Hospital by virtue of a consent judgment entered in its favor and against Columbia Hospital on October 4, 2002, in the case styled *Jackson & Campbell, P.C. v. Columbia Hospital for Women Medical Center, Inc.*, Civil Action No. 02-0000838 (D.C. Super. Ct.) (the "J&C Litigation") in the original principal amount of $189,429.41 (the "J&C Judgment").

15.   As of October 6, 2003, NCRIC was not a party to, and had no interest in, or connection with, the J&C Litigation.

16.   Columbia Hospital issued letters to creditors in October, 2002, in which it stated that it would be unable to satisfy the claims of unsecured creditors and that the debts of and claims against Columbia Hospital far exceeded its assets.

NCRIC had obtained a copy of one such letter by June 5, 2003.[3]

17.   On October 7, 2003, NCRIC entered into an assignment

agreement with Jackson and Campbell regarding the J&C Judgment

---

[3]   This stipulated finding of fact differs somewhat from the following proposed findings of fact suggested by Columbia Hospital:

1.   With the exception of its counterclaim against NCRIC in the NCRIC Litigation and certain assets of de minimis value, Columbia Hospital had no assets as of October 7, 2003, the date on which NCRIC acquired rights to the J&C Judgment, with which to satisfy the claims of any creditor.

2.   NCRIC was aware that as of October 7, 2003, Columbia Hospital had no assets [from] which to satisfy the claims of any creditor, with the exception of Columbia Hospital's counterclaim against NCRIC in the NCRIC Litigation and certain assets of de minimis value.

In support of these proposed findings of fact, Columbia Hospital directs the court to Columbia Hospital's Amended Answer and Counterclaims, filed on January 5, 2001, in the Superior Court (Exh. 3), and NCRIC's Motion to Require Defendant to Provide Security for Costs with an attached letter dated October 15, 2002, from Columbia Hospital's liquidating trustees, indicating that the hospital lacked funds to pay debts owed or judgments obtained.  The court finds that the evidence supports only the narrower stipulated finding of fact, as stated above.
These proposed findings of fact are presumably offered as predicate facts for the additional proposed finding of fact that NCRIC's sole purpose in acquiring the J&C Judgment was to conduct further litigation against Columbia Hospital in the form of post-judgment collection proceedings, a proposition that goes to the issue of equity and the un-pled defense of champerty.  Even if the court were to find that Columbia Hospital did in fact lack any assets from which to satisfy the J&C Judgment as of October 7, 2003, and that NCRIC was aware that Columbia Hospital lacked such assets when it acquired the J&C Judgment, the fact that NCRIC might collect on the J&C Judgment by way of setoff with respect to a potential judgment against it in the NCRIC Litigation is sufficient to avoid the inference that NCRIC did not intend to collect on the J&C Judgment.

(the "Assignment Agreement").

18.   On October 8, 2003, Jackson & Campbell filed in the J&C Litigation a "Notice of Assignment of Judgment to NCRIC, Inc." ("Notice of Assignment").

19.   Columbia Hospital had been represented by Leo Roth, Esq. in the J&C Litigation; however, his representation of Columbia Hospital was limited to negotiation and entry of the J&C Judgment.  From and after entry of the J&C Judgment, Columbia Hospital was not represented by counsel in the J&C Litigation.

20.   After filing its Notice of Assignment in October 2003, NCRIC commenced post-judgment proceedings against Columbia Hospital and its principals in the J&C Litigation by, among other things, filing discovery motions, taking discovery, and serving subpoenas and other documents upon the former directors and officers of Columbia Hospital personally and through professional process servers, including the following:

a.   On Michael Barch on November 25, 2003, at his residence.

b.   On Dr. Robin Newton on December 10, 2003, at her residence.

c.   On Michael Barch on December 15, 2003, at his residence.

d.   On Dr. Safa Rifka on December 15, 2003, at his place of business during business hours.

9

e.   On Peter Ben-Ezra on December 15, 2003, at his place of business during business hours.

f. On Dr. Nabil Asterbadi on December 15, 2003, at his residence.

g.   On Dr. Nabil Asterbadi on December 15, 2003, at his place of business during business hours.

h.   On Dr. Safa Rifka on January 22, 2004, at his place of business during business hours.

i.   On Dr. Nabil Asterbadi on January 22, 2004, at his residence.

j.   On Dr. Safa Rifka on January 30, 2004, at his place of business during business hours.

21.   Dr. Rifka, Dr. Asterbadi and Mr. Ben Ezra were all directors of Columbia Hospital at the time the decision was made to close the hospital and liquidate its assets.

22.   The District of Columbia Superior Court, Judge Stephanie Duncan-Peters, entered orders regarding NCRIC's taking of discovery in the J&C Litigation.

23.   Mr. Barch objected to NCRIC's taking of discovery in the J&C Litigation both by sending a letter to the District of Columbia Superior Court dated November 6, 2003, and, at one point, by appearing before the Court and objecting to NCRIC's proposed discovery.

24.   Columbia Hospital did not file papers in the NCRIC

Litigation objecting to or challenging NCRIC's taking of discovery in the J&C Litigation.

25.  Trial in the NCRIC Litigation commenced on January 26, 2004.

26.  Dr. Safa Rifka and Peter Ben-Ezra testified on behalf of Columbia Hospital during the trial in the NCRIC Litigation, and Dr. Nabil Asterbadi was deposed by NCRIC in July 2001, prior to trial.  Dr. Rifka, Dr. Asterbadi, Mr. Barch and Ms. Newton were identified as trial witnesses by NCRIC and Mr. Ben Ezra was identified as a trial witness for Columbia Hospital and thus these individuals were known by NCRIC to be potential trial witnesses at the time NCRIC began conducting its post-judgment proceedings in the J&C Litigation and at the time NCRIC was conducting its post-judgment proceedings in the J&C Litigation.

27.  NCRIC took no discovery from Dr. Rifka, Dr. Asterbadi and Mr. Ben Ezra in the J&C Litigation.

28.  NCRIC deposed Mr. Barch in the J&C Litigation on January 5, 2004 (the "Barch Deposition").  Mr. Barch was not represented by counsel during the Barch Deposition.

29.  On or about February 20, 2004, the jury in the NCRIC Litigation returned a verdict in favor of Columbia Hospital and against NCRIC, and the Superior Court of the District of Columbia entered a judgment against NCRIC in the original principal amount of $18,220,002, plus interest and costs (the

"NCRIC Judgment").

30.   With the exception of the NCRIC Judgment and certain assets of de minimis value, Columbia Hospital had no assets as of February 20, 2004, with which to satisfy the claims of any creditor.

31.   NCRIC, after denial by the Superior Court of various post-trial motions, appealed the NCRIC Judgment to the District of Columbia Court of Appeals.  In connection with this appeal, a supersedeas bond was posted by NCRIC and execution on the NCRIC Judgment was therefore stayed during the pendency of the NCRIC appeal.

32.   NCRIC did not assert any setoff claim or request that any amounts due under the J&C Judgment be set off against its liabilities to Columbia Hospital at any time during the NCRIC Litigation either before or after the proceedings with respect to the supersedeas bond.

33.   NCRIC ceased all post-judgment proceedings in the J&C Litigation after entry of the NCRIC Judgment.

34.   At no time during the appellate proceedings concerning the NCRIC Judgment did NCRIC mention the existence of any setoff claim or attempt to assert such claim with respect to the NCRIC Judgment.

35.   During the pendency of the NCRIC appeal, various parties asserting claims against Columbia Hospital sought

12

enforcement of, and execution with respect to, their various claims against Columbia Hospital.  Such enforcement and execution actions included, but were not necessarily limited to, garnishment and attachment proceedings brought against NCRIC, including the following.

a.  Kellogg Huber, counsel to Columbia Hospital in the NCRIC Litigation, claimed an attorneys' lien on the proceeds of the NCRIC Judgment and demanded that NCRIC "jointly" pay the full judgment amount to both Kellogg Huber and Columbia Hospital pursuant to the terms of Kellogg Huber's fee agreement with Columbia Hospital;

b.  Laboratory Corporation of America ("LCA") served NCRIC with a writ of attachment seeking to compel NCRIC to hold judgment proceeds for the benefit of LCA in the amount of $187,637.06, plus accrued interest, $28,145.56 in attorneys' fees and $140 in costs in litigation styled *Laboratory Corporation of America v. Columbia Hospital*, 02-4230 (D.C. Super. Ct.);

c.  GE HFS Holdings Inc., fka Heller Healthcare Finance, Inc. ("GE"), served NCRIC with a writ of attachment seeking to compel NCRIC to hold judgment proceeds for the benefit of GE in the amount of $1,942,932.30 plus accrued interest in litigation styled *Heller Healthcare Finance Inc. v. Columbia Hospital for Women Medical Center*, 02-1857

(D.D.C.);

d.   Watkins & Assman Consulting LLC ("Watkins") served NCRIC with a writ of attachment seeking to compel NCRIC to hold judgment proceeds for the benefit of Watkins in the amount of $777,807.25, plus accrued interest and $26,463.50 in attorneys fees in litigation styled *Watkins & Assman Consulting LLC v. Columbia Hospital for Women Medical Center*, 02-8449 (D.C. Super. Ct.);

e.   The United States Internal Revenue Service ("IRS") served NCRIC with a Notice of Levy against the proceeds of the NCRIC Judgment in the amount of $4,520,434.92;

f.   Karin N. Barnes served NCRIC with a writ of attachment seeking to compel NCRIC to hold judgment proceeds for the benefit of claimant Barnes in the amount of $3,000,000 plus accrued interest in connection with a purported judgment against Columbia Hospital in litigation styled *Barnes v. Columbia Hospital for Women Medical Center*, 00-CA-2731 (D.C. Super. Ct.);

g.   Artulies K. Smith served NCRIC with a writ of attachment seeking to compel NCRIC to hold judgment proceeds for the benefit of claimant Smith in the amount of $215,922.62 plus accrued interest in connection with a purported judgment against Columbia Hospital in litigation styled *Smith v. Columbia Hospital for Women Medical Center*,

14

99-CA-6602 (D.C. Super. Ct.);

h.  Michelle and Bryan Hutchinson served NCRIC with writs of attachment seeking to compel NCRIC to hold judgment proceeds for the benefit of claimants Michelle and Bryan Hutchinson in the amount of $23,825,813 plus accrued interest in connection with a default judgment against Columbia Hospital in medical malpractice litigation styled *Hutchinson v. Columbia Hospital for Women Medical Center*, 03-CA-4780 (D.C. Super. Ct.);

i.  C2 Professional Services LLC ("C2") served NCRIC with a writ of attachment seeking to compel NCRIC to hold judgment proceeds for the benefit of C2 in the amount of $152,927.50, plus accrued interest and $280.00 in costs in connection with a purported judgment against Columbia Hospital in litigation styled *C2 Professional Services, LLC v. Columbia Hospital for Women Medical Center*, 02-CA-4993 (D.C. Super. Ct.); and

j.  Scott Field, Chapter 7 Trustee for the estate of Cynthia D. Sadler ("Sadler") served NCRIC with a writ of attachment and amended writ of attachment seeking to compel NCRIC to hold judgment proceeds for the benefit of claimant Sadler in the amount of $200,000 plus interest in connection with a purported judgment against Columbia Hospital in litigation styled *Sadler v. Columbia Hospital for Women*

15

*Medical Center*, 02-CA-4401 (D.C. Super. Ct.).

36.   NCRIC filed responses in all of the above-referenced garnishment/attachment proceedings denying that garnishment was proper.   NCRIC did not assert any right of setoff against the NCRIC Judgment in any of these garnishment/attachment proceedings.

37.   On or about October 2, 2008, the District of Columbia Court of Appeals affirmed the NCRIC Judgment in all respects.

38.   NCRIC petitioned the District of Columbia Court of Appeals for rehearing and rehearing en banc.   NCRIC's petition was denied by the Court of Appeals on January 5, 2009.

39.   Columbia Hospital filed its voluntary petition under Chapter 11 of the Bankruptcy Code in this Court on or about January 6, 2009 (the "Petition Date").

40.   As of the Petition date, the following parties held allowed secured claims against the NCRIC Judgment, perfected no

later than the dates indicated in the following table:[4]

---

[4]   As additional proposed findings of fact, Columbia
Hospital asserts:

- Artulies K. Smith, Karin N. Barnes, and Michele
  Hutchinson hold validly perfected liens upon the
  proceeds of the NCRIC Judgment, the aggregate total
  of which exceeds the proceeds of the NCRIC
  Judgment. The liens of Artulies K. Smith, Karin N.
  Barnes, and Michele Hutchinson are each senior in
  priority to the setoff rights of NCRIC.

- Kellogg Huber, Artulies K. Smith, Karin N. Barnes,
  and Michele Hutchinson will be harmed if NCRIC is
  permitted to assert its setoff claim.

The court declines to adopt these additional proposed findings of
fact. The relative priority of liens presents a legal question,
and only after the court has adjudicated the question of priority
can it fairly say whether competing lienholders will be harmed by
NCRIC's exercise of its setoff rights, as it would be
inappropriate to suggest that one lienholder's lawful exercise of
superior lien rights causes "harm" to a competing lienholder
merely by virtue of the exercise of those superior rights. The
court accepts the proposition that NCRIC's exercise of its setoff
rights will reduce the assets available for distribution to other
creditors, but to characterize that reduction as causing harm to
other creditors is misleading as it suggests that those creditors
are being wrongfully deprived as opposed to receiving
distribution under the terms of the confirmed plan and consistent
with provisions of the Bankruptcy Code.

| Creditor | Proof of Claim Amount | Type of Lien | Date(s) of Perfection |
|---|---|---|---|
| Kellogg, Huber, Hansen, Todd & Evans, P.L.L.C. | $10,555,070.91 | Uniform Commercial Code; attorneys' lien | 2000 |
| District of Columbia | $60,959.89 | District of Columbia Tax Liens | 11/02; 04/03; 05/03; 12/03 |
| IRS | $2,377,328.93 | Federal Tax Liens | 07/02; 11/02; 12/03 |
| IRS | $3,448,738 | Federal Tax Lien (penalties)[5] | 07/05 |
| Watkins & Assman Consulting, LLC | $1,106,977.60 | Garnishment Lien (District of Columbia law) | 03/02/04 |
| GE HFS Holdings, Inc. f/k/a Heller Healthcare Finance, Inc. | $1,945,247.41 | Garnishment Lien (District of Columbia law) | 03/04/04 |
| Laboratory Corporation of America | $332,086.75 | Garnishment Lien (District of Columbia law) | 03/11/04 |
| Artulies K. Smith | $2,550,273.96 | Garnishment Lien (District of Columbia law) | 10/07/08 |
| Karin N. Barnes | $691,287.03 | Garnishment Lien (District of Columbia law) | 10/07/08 |
| Michele Hutchinson | $28,145,791.92 | Garnishment Lien (District of Columbia law) | 10/07/08 |

---

[5]   Lien avoided for the benefit of the bankruptcy estate of Columbia Hospital pursuant to Section 551 of the Bankruptcy Code in accordance with the Amended and Modified Chapter 11 Plan of Liquidation of Columbia Hospital for Women Medical Center, Inc.

41.   On the Petition Date, NCRIC filed an interpleader
action in the United States District Court for the District of
Columbia seeking to interplead the amounts due under the NCRIC
Judgment pursuant to 28 U.S.C. § 1335 (the "Interpleader
Action").   This action was stayed as a result of the bankruptcy
filing by Columbia Hospital and was subsequently dismissed by
NCRIC on May 6, 2009.

42.   NCRIC did not assert any right to setoff on account of
the J&C Judgment in the Interpleader Action.   NCRIC contends that
it had determined that it was in its best interest not to plead
setoff because doing so would have required NCRIC to have been,
in effect, both plaintiff and defendant in the interpleader
action, and that it desired to deposit the entire amount of the
NCRIC Judgment and have the court immediately dismiss it as a
party in the interpleader action.[6]

43.   From and after the Petition Date, Columbia Hospital and
NCRIC sought to reach agreement regarding NCRIC's voluntary
turnover of the amounts due Columbia Hospital under the NCRIC
Judgment.

44.   On or about February 13, 2009, during the course of

---

[6]   In a proposed unstipulated finding of fact, Columbia
Hospital asks the court to find that in all instances in which
NCRIC did not assert a right of setoff, it had an opportunity to
do so.   The court declines to enlarge the findings of fact in
this regard, and instead treats the question of whether NCRIC
could have or was required to assert setoff in any given instance
as a question of law.

these negotiations, counsel for NCRIC advised counsel for
Columbia Hospital that NCRIC was claiming a setoff against the
NCRIC Judgment in the principal amount of $189,429.41 on account
of the J&C Judgment.

45.   On or about March 20, 2009, after the filing of this
adversary proceeding, NCRIC filed a motion seeking relief from
the automatic stay in bankruptcy to permit it to exercise its
claimed right of setoff against the NCRIC Judgment.

46.   Columbia Hospital opposed the relief sought by NCRIC,
and on or about April 28, 2009, in accordance with an agreement
reached between NCRIC and Columbia Hospital with respect to
NCRIC's motion for relief from stay, this Court entered an order:

a. requiring NCRIC to turn over the sum of
$21,062,712.91 plus interest in the amount of $1,497.53 per
day beginning April 9, 2009, through and including April 20,
2009, but less the amount of $238,795.26 plus interest in
the amount of $20.76 per day beginning April 9, 2009,
through and including April 20, 2009, which latter amount
NCRIC claims is the amount of its setoff claim; and

b. permitting Columbia Hospital as well as creditors
and parties in interest in this bankruptcy proceeding to
challenge NCRIC's claim of setoff in this bankruptcy case.

47.   On or about April 28, 2009, NCRIC paid the sum of
$20,841,638.89 to Columbia Hospital.

48.  NCRIC continues to hold the sum of $239,044.38, which represents the balance of the sum due to Columbia Hospital on account of the NCRIC Judgment and which NCRIC asserts is the amount that it is entitled to setoff against the NCRIC Judgment.

49.  Jackson & Campbell is listed on Schedule F and Amended Schedule F to Columbia Hospital's bankruptcy schedules as a creditor holding an unsecured, disputed claim on account of the J&C Judgment.  On or about January 26, 2009, counsel for Columbia Hospital timely served a notice upon Jackson & Campbell, as required under Rule 1007(b) of the Local Rules of the Bankruptcy Court for the District of Columbia, informing Jackson & Campbell that its claim has been listed as an unliquidated and/or disputed claim and of its right to file a proof of claim in Columbia Hospital's bankruptcy case.

50.  Jackson & Campbell did not file any proof of claim in this case on account of the J&C Judgment.

51.  NCRIC did not file any proof of claim in this case on account of the J&C Judgment.

52.  The deadline for filing proofs of claim in this case expired on May 18, 2009, for all creditors except governmental

entities.[7]

B

*Additional General Findings of Fact*

The court makes the following additional findings of fact based upon the proposed unstipulated factual findings submitted by Columbia Hospital.

53.   The unsecured creditors of Columbia Hospital will recover pennies on the dollar on account of their allowed claims in the bankruptcy case due to the limited assets available for distribution under the Plan.

54.   Kellogg Huber represented Columbia Hospital in the NCRIC litigation starting no later than November 6, 2000, and holds a validly perfected lien upon the proceeds of the NCRIC

---

[7]   Findings of fact ¶¶ 49-52 relate to the question of whether NCRIC's claim of setoff on account of the J&C Judgment was adequately preserved in this bankruptcy case.  As to that issue, Columbia Hospital proposes the following additional finding of fact:

> The J&C Judgment was an unsecured, disputed claim against Columbia Hospital as of the Petition Date, which claim was disallowed in Columbia Hospital's bankruptcy case.

The court disagrees.  As explained later in this decision, NCRIC asserted and pursued its right of setoff prior to the claims bar date, and Columbia Hospital agreed to the summary trial procedures pursuant to which the issue is now before the court; failure to file a proof of claim is not fatal to NCRIC's assertion of its right of setoff.

Judgment on account of that representation.[3]

The court also makes the following additional findings of fact based on a review of the exhibits.

55.  Although NCRIC took no further discovery regarding the J&C Judgment after the entry of the NCRIC Judgment, NCRIC requested the Superior Court on March 26, 2004, to postpone the status conference regarding its post-judgment discovery as to the J&C Judgment, and stated:

> We are still reviewing and analyzing the financial documents from the Columbia archives, as well as additional information Mr. Barch provided after the conference in February.  When we have completed this review, we intend to go forward with the depositions of the three individuals [other than Mr. Barch] the Court granted us leave to depose.

From this I infer that NCRIC was genuinely interested in ascertaining whether there were assets from which the J&C Judgment might be collected, but after reviewing the additional information Barch provided, decided that there was no need for additional discovery.  I also infer that after entry of the NCRIC Judgment, NCRIC was not using the J&C Judgment as a tool of harassment against the former directors and one of the liquidating trustees of Columbia Hospital in an effort to bring pressure on Columbia Hospital to settle the NCRIC Litigation

---

[3]  Columbia Hospital's proposed finding of fact also asserts that Kellogg Huber's lien is senior in priority to NCRIC's setoff right.  Although the court agrees, that is a conclusion of law not fact. *Cont'l Cas. Co. v. Kelly*, 106 F.2d 841 (D.C. Cir. 1939).

which was then on appeal.


C

*Additional Findings of Fact Regarding*
*Purpose of Acquisition of J&C Judgment*

Columbia Hospital also offered the following proposed findings of fact:

- NCRIC's sole purpose in acquiring rights to the J&C Judgment was to conduct further litigation against Columbia Hospital in the form of post-judgment collection proceedings.

- NCRIC employed the J&C Judgment to attempt to gain a litigation advantage and/or to attempt to extract a favorable settlement from Columbia Hospital in the NCRIC Litigation.

These findings are principally germane to Columbia Hospital's un-pled champerty defense. NCRIC having not received fair notice that champerty was alleged, I need not make findings pertinent to that defense.

As to Columbia Hospital's other defenses to NCRIC's claim of setoff, these proposed findings, even if correct, would not alter the outcome of the court's decision on those other defenses. Moreover, I find as follows:

56. NCRIC did not have a sole purpose in acquiring the J&C Judgment to gain a litigation advantage or to attempt to extract a favorable settlement from Columbia Hospital in the NCRIC Litigation. NCRIC necessarily was aware that it was gaining a right of setoff in acquiring the J&C Judgment, even if the

primary purpose for acquiring the J&C Judgment was to allow it to take discovery that might assist it in the defense of the NCRIC Litigation.  In addition, the discovery that NCRIC took was limited to deposing Mr. Barch, who was Columbia Hospital's liquidating trustee, and obtaining documents from him, and the discovery was pertinent to exploring whether the J&C Judgment could be collected, even though it appears to have also been pertinent to defenses that NCRIC was raising in the NCRIC Litigation.  Once the NCRIC Judgment was entered, and NCRIC had an opportunity to examine materials produced by Mr. Barch, NCRIC ceased pursuing discovery regarding the J&C Judgment, and at that juncture the benefit to it of its acquisition of the J&C Judgment (unless the NCRIC Judgment were reversed on appeal) was the right of setoff conferred upon it.  NCRIC did not attempt after the NCRIC Judgment was entered to utilize the J&C Judgment for any improper purpose.

II

"The right of setoff of mutual obligations is expressly recognized in the Bankruptcy Code which treats a right of setoff as the equivalent of a security interest . . . . [and] allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding the absurdity of making A pay B when B owes A." *King v. Fulbright & Jaworski (In re Koch)*,

224 B.R. 572, 575 (E.D. Va. 1998) (internal citations and
quotations omitted).  To assert a valid right of setoff under
§ 553(a), the following conditions must exist: (1) the creditor
must hold a claim against the debtor that arose prepetition; (2)
the creditor must owe a debt to the debtor that also arose
prepetition; (3) the claim and the debt must be mutual; and (4)
the claim and debt much each be valid and enforceable.  5 Collier
on Bankruptcy ¶ 553.01[1] (16th ed. 2011).  "In the end, the
question of setoff is an equitable determination for this court
to make." *In re Judiciary Tower Assocs.*, 175 B.R. 796, 819
(Bankr. D.D.C. 1994) (citing *In re S. Indus. Banking Corp.*, 809
F.2d 329, 332 (6th Cir. 1987); *United States v. Norton*, 717 F.2d
767, 772 (3d Cir. 1983)).[4]

Although the parties agree that the J&C Judgment arose and
was assigned to NCRIC several years prepetition, and the NCRIC
Judgment likewise arose prepetition, Columbia Hospital contends
that setoff is unavailable because the claim and debt are not
mutual, and circumstances render the assignment unenforceable.
The court will address each of Columbia Hospital's arguments in

---

[4]   Section 553 does not, in and of itself, create
substantive rights of setoff, but instead, "ensures the survival
of rights otherwise existing."  *M & T Elec. Contractors, Inc. v.
Capital Lighting & Supply, Inc. (In re M & T Elec. Contractors,
Inc.)*, 267 B.R. 434, 450 (Bankr. D.D.C. 2001), citing *Citizens
Bank of Md. v. Strumpf*, 516 U.S. 16, 18 (1995).  The parties do
not dispute that the setoff of judgments is generally permissible
under District of Columbia law.  *See, e.g., Block v. Gates*, 68
A.2d 215 (D.C. 1949).

turn.

A

*Mutuality of Obligations*

Columbia Hospital contends that NCRIC's setoff claim should
be denied because no mutuality of obligations exists between
Columbia Hospital and NCRIC.  According to Columbia Hospital,
although the Assignment Agreement purports to convey all right,
title and interest in the J&C Judgment to NCRIC, because Jackson
& Campbell retained certain rights under the agreement, including
the right to one-half of any gross sums recovered by NCRIC, and
the agreement imposed upon NCRIC duties owed to Jackson &
Campbell, including the provision of status reports, the
substance of the transaction was not that of an absolute
assignment.

Courts are generally "in agreement that an assignment of
rights can create mutuality for setoff purposes."  *In re U.S.
Aeroteam, Inc. v. Delphi Auto. Sys. (In re U.S. Aeroteam, Inc.),*
327 B.R. 852, 865 (Bankr. S.D. Ohio 2005).  For a claim and a
debt to be deemed mutual for purposes of setoff under 11 U.S.C. §
553, they must both arise pre-petition, be owed in the same right
and between the same parties, and those parties must be acting in
the same capacity. 5 Collier on Bankruptcy ¶ 553.03[3][a] (16th
ed. 2011).  Columbia Hospital argues that mutuality is lacking
because (a) the debts are not owed between the same parties

27

insofar as NCRIC has promised to pay 50% of any gross sums recovered to Jackson & Campbell, and (b) NCRIC is acting in a fiduciary capacity, and not simply on its own behalf, to the extent it has promised to pay a percentage of amounts recovered to Jackson & Campbell.  The court rejects these arguments and finds that mutuality exists such that, to the extent the J&C Assignment is otherwise held valid and enforceable, setoff should be permitted.

Whether mutuality for setoff purposes exists between NCRIC's assertion of the J&C Judgment and Columbia Hospital's interest in the NCRIC Judgment turns on the substance of the Assignment Agreement between NCRIC and Jackson & Campbell.  "The mere labeling of an assignment as 'absolute' ought not . . . end a court's inquiry in the substance of the transaction.  Rather, the court must undertake to discern the actual intent of the parties 'from the contents of the document, the testimony of the contracting parties and the circumstances surrounding the transaction.'"  *In re 1301 Conn. Ave. Assocs.*, 117 B.R. 2, 8 (Bankr. D.D.C. 1990) (quoting *Goldstein v. Madison Nat'l Bank*, 89 B.R. 274, 276 (D.D.C. 1988)).  This is an exception to the general rule that District of Columbia courts, when interpreting unambiguous contractual provisions, do not consider extrinsic evidence, but instead "find[] the intention of the parties in the language used to express their agreement."  *Nofziger Commc'ns,*

28

*Inc. v. Birks*, 989 F.2d 1227, 1230 (D.C. Cir. 1993) (quoting *E.P. Hinkel & Co. v. Manhattan Co.*, 506 F.2d 201, 204 (D.C. Cir. 1974)).

"As a general rule, the concept of capacity requires that the parties each owe the other something in his or her own name, and not as a fiduciary." 5 Collier on Bankruptcy ¶ 553.03[3][c] (16th ed. 2011). The "capacity" in which NCRIC holds the J&C Judgment is determined by the Assignment Agreement and the law in the District of Columbia regarding assignments. The court finds that the Assignment Agreement constitutes an absolute assignment of the J&C Judgment from Jackson & Campbell to NCRIC, and that NCRIC thus asserts the right of setoff on its own behalf, and not as an agent, trustee, or fiduciary acting on behalf of Jackson & Campbell.

First, paragraph 1 of the Assignment Agreement uses language consistent with that of an absolute assignment:

> 1. ASSIGNMENT: (a) J&C hereby assigns all right, title and interest in the Judgment to NCRIC. It is the intent of the parties hereto that J&C shall and does hereby quitclaim its interest in the Judgment, transferring hereby its rights to enforce and collect upon the Judgment to NCRIC, as Assignee. (B) J&C agrees to execute any documents and perform any actions reasonably required of it to complete, evidence or record this Agreement and the Assignment here described. Specifically, J&C agrees to execute and file with the Clerk of the Superior Court the Notice of Assignment of Judgment in the form attached hereto as Exhibit A.

Although the court could look beyond this language if the balance

of the agreement did not also reflect an intent to make an absolute assignment, that is not the case here.

Second, the agreement was made for valuable consideration. The agreement includes the following provisions relating to consideration:

2.    CONSIDERATION: NCRIC hereby agrees to pay to J&C as consideration for the Assignment the sum of $10.00.

3.    ADDITIONAL CONSIDERATION: NCRIC agrees that it will pay to J&C Additional Consideration based on the collection of any monies it obtains from and as a result of enforcement of the Judgment.   The Additional Consideration shall be one-half(½) of the gross amount of all sums recovered.   Payment of the Additional Consideration shall be due ten (10) days after the actual receipt of sums collected by NCRIC.   J&C shall have no obligation with respect to any fees, costs, or expenses incurred by NCRIC pursuant to this Agreement.

The true economic component of the bargain between the parties is set forth in paragraph 3, which addresses "Additional Consideration," and provides that NCRIC is to pay to J&C "Additional Consideration of one-half (½) of the gross amount of

all sums recovered."[5]  Although this provision entitles Jackson &

Campbell to payment from NCRIC only in the event of a recovery,[6]

this does not render the assignment anything less than an

outright assignment and does not otherwise relegate NCRIC to the

role of a fiduciary obligated to act on Jackson & Campbell's

behalf.

Third, the agreement vests in NCRIC absolute authority to

dictate the manner in which the judgment is enforced.

Specifically, the agreement provides as follows with respect to

NCRIC's obligation to pursue the judgment or take steps in

pursuit of the judgment:

---

[5]  In its proposed additional findings of fact, Columbia
Hospital asks the court to find that as of October 7, 2003, the
date on which NCRIC acquired rights to the J&C Judgment, Columbia
Hospital had no assets with which to satisfy the claims of any
creditor, and that NCRIC was aware as of that date that Columbia
Hospital had no assets with which to satisfy the claims of any
creditor, with the exception of Columbia Hospital's counterclaim
against NCRIC in the NCRIC Litigation and certain assets of *de
minimis* value. *See* Dkt. No. 32, at 11, Prop. Add. Facts, ¶¶ 1-2.
Even if the court were to make such findings, the judgment in
NCRIC's hands nevertheless had the potential for value, even if
that value could only be realized by way of setoff.  Likewise, to
the extent Columbia Hospital's financial condition influenced the
terms of the assignment agreed to by Jackson & Campbell and
NCRIC, even if the parties both recognized that the prospect of
recovery was remote, that is not enough to render the assignment
without valuable consideration.

[6]  Given that the assignment grants to NCRIC the right to
collect a judgment in the amount of $189,429.41, the recited
consideration of ten dollars ought to be understood as mere
nominal consideration.  *See O'Neill v. DeLaney*, 415 N.E.2d 1260
(Ill. App. Ct. 1980).

5.   REPRESENTATIONS OF NCRIC: As Assignee, NCRIC represents and warrants that it has the authority to make this Agreement; NCRIC represents that it will provide a status report on any Additional Consideration at least as frequently as the anniversary of this Agreement and whenever any monies are actually collected pursuant to the Agreement; and NCRIC represents that it will pursue collection of the Judgment, provided, however, that any duties of NCRIC to expend legal fees in collection efforts shall be determined in its sole discretion; NCRIC specifically disclaims any duty to take any specific action in collection or pursuit of the Judgment.

The court finds that this provision vests in NCRIC absolute authority to dictate the manner in which the judgment is enforced, consistent with an absolute assignment. Although NCRIC has obligated itself to provide status reports to Jackson & Campbell, the purpose and effect of that requirement was not to limit NCRIC's rights under the assignment; rather, it was designed to keep Jackson & Campbell informed about any right to additional consideration arising under paragraph 3 of the agreement. In paragraph 5, NCRIC represents that it will pursue the judgment, but expressly disclaims an obligation to take any specific actions in that pursuit. The court concludes that Jackson & Campbell did not, by reason of that provision, retain any legally cognizable interest in the judgment. Likewise, this provision did not render NCRIC a fiduciary obligated to act on Jackson & Campbell's behalf and for Jackson & Campbell's benefit. Accordingly, the court finds that this was an absolute assignment

and that mutuality of obligations thus exists for purposes of setoff.

B

*NCRIC's Right of Setoff Accrued When
it Acquired the J&C Judgment and
Takes Priority Over the Garnishment Liens*

The court need only address the priority of NCRIC's setoff rights over judgment execution liens, because I will assume, without deciding, that the other liens are superior to NCRIC's right of setoff.  In that regard, the lien claim of Kellogg Huber, counsel to Columbia Hospital in the NCRIC Litigation, was for $10,555,070.91.[7]  The IRS and D.C. acquired tax liens in 2002, 2003, and 2005 aggregating almost $6,000,000.[8]  Even if the

---

[7]  Kellogg Huber has asserted an attorney's lien in the proceeds of the NCRIC Judgment, and given that its representation of Columbia Hospital began no later than November 7, 2000 (Exh. 1, Columbia Hospital's Answer and Counterclaims in Superior Court), before NCRIC acquired rights in the J&C Judgment, Kellogg Huber's rights in the proceeds of the NCRIC Judgment are superior to NCRIC's right of setoff.  *See Cont'l Cas. Co. v. Kelly*, 106 F.2d 841, 843 (D.C. Cir. 1939) (attorney brought suit on behalf of client pursuant to a contingent fee agreement and court found that this gave rise to a contract lien in the judgment that, "even if . . . inchoate before judgment, [ ] relates back and takes effect from the time of the commencement of the suit and is, therefore, superior to rights of set off which arise subsequently.").

[8]  I bypass the issue of whether NCRIC's right of setoff became choate when NCRIC acquired the J&C Judgment in October 2003 such as to take priority over IRS tax liens that arose afterwards.  *See In re M & T Elec. Contractors*, 267 B.R. at 459-60.

33

liens of those three creditors are superior to NCRIC's right of setoff, the NCRIC Judgment of $18,220,002 plus interest and costs is more than adequate to cover those claims as well as NCRIC's setoff claim of $239,044.38.

That leaves only the question of the relative priority of NCRIC's setoff rights over Columbia Hospital's other lien creditors, holders of various judgment liens acquired after NCRIC's right of setoff accrued in October 2003, and after the NCRIC Judgment was entered in February 2004. Those creditors may have taken steps to perfect their interests in the NCRIC Judgment, but, for reasons explored below, they could not acquire an interest in the NCRIC Judgment superior to that which Columbia Hospital was entitled to claim, and Columbia Hospital's interest in the NCRIC Judgment was always subject to NCRIC's right of setoff with respect to the pre-existing J&C Judgment. Accordingly, NCRIC's right of setoff is not defeated by competing judgment liens against the NCRIC Judgment.

Columbia Hospital contends that because NCRIC failed to exercise its alleged right of setoff before certain creditors of Columbia Hospital perfected their respective interests in the NCRIC Judgment, NCRIC's right to recover on its asserted right of setoff is inferior to the claims of those secured creditors. Columbia Hospital Opening Br. at 21 (Dkt. No. 32), citing *In re M & T Elec. Contractors, Inc.*, 267 B.R. at 459; *S.E.L. Maduro*

34

*(Fla.) Inc., v. Strachan Shipping Co.,* 800 F.2d 1572, 1576-77 (11th Cir. 1986); *United States v. Citizens & S. Nat'l Bank*, 538 F.2d 1101 (5th Cir. 1976), *cert. denied*, 430 U.S. 945 (1977); *United States v. Sterling Nat'l Bank & Trust Co. of N.Y.*, 360 F. Supp. 917, 924-25 (S.D.N.Y. 1973), *aff'd in part and rev'd in part on unrelated grounds,* 494 F.2d 919 (2d Cir. 1974); *Baltimore & Assocs., Inc. v. Mun. Escrow & Title Co.*, 625 F. Supp. 1271, 1273 (D.D.C. 1985).  Those decisions are all irrelevant or contradict the proposition advanced by Columbia Hospital:

- *In re M & T Electrical*, *Citizens and S. Nat'l Bank*, and *Sterling Nat'l Bank & Trust Co.* address not the issue of when a right of setoff arises so as to defeat a later garnishment, but address instead when a bank's non-contractual right of setoff against a bank account becomes choate (under the harsh non-statutory doctrine of choateness applicable to federal tax liens)[9] such as to take priority over a later-arising federal tax lien. Those decisions hold that the right of setoff is not choate until the bank takes some action to exercise the right of setoff.  The federal choateness doctrine has not been applied under state law to the priority of a right of setoff against a later-arising garnishment.

---

[9]  The choateness doctrine is ameliorated by 26 U.S.C. § 6323(a) in the case of a contractual right of setoff.

- *Baltimore & Assocs.* held that a right of setoff "does not have to be exercised before a writ of attachment is served by another creditor.  The bank may exercise its right of setoff once a depositor's account is threatened by attachment."  625 F. Supp. at 1272 (citation omitted).  Accordingly, that decision stands contrary to the proposition advanced by Columbia Hospital.

- *S.E.L. Maduro* addressed the priority of a right of setoff under Florida law as against a security interest and concluded that Florida's Uniform Commercial Code gave the security interest priority.  The execution liens at issue here, however, are not security interests, and, in any event, *S.E.L. Maduro* has been rejected by Florida courts.[10]

The execution liens at issue here amounted to an involuntary assignment to the executing creditor as garnishor (to the extent of the amount of the garnishor's judgment) of Columbia Hospital's rights against NCRIC as an obligor under the NCRIC Judgment.  An

---

[10]   *S.E.L. Maduro* has been rejected by a Florida appellate court.  *See Bank of Winter Park v. Resolution Trust Corp.*, 633 So.2d 53, 55 (Fla. Dist. Ct. App. 1994) (non-code law applies to priority disputes when bank asserts right of setoff).  As *Bank of Winter Park* and other Florida decisions recognize, a right to setoff against a matured debt prevails over a later assignment or garnishment.  *See id.; Bostic v. Bostic*, 678 So. 2d 366, 368 (Fla. Dist. Ct. App. 1996) (garnishee may claim a setoff of money due and owing if the setoff is based on a matured debt).

assignment of an obligation, however, is subject to the obligor's right of setoff if that right of setoff was in existence when the assignment was made. *Hudson Supply & Equip. Co. v. Home Factors Corp.*, 210 A.2d 837, 838 (D.C. 1965). *See also Rittenberg v. Donohoe Constr. Co.*, 426 A.2d 338, 341 (D.C. 1981); *Gen. Elec. Credit Corp. v. Sec. Bank of Wash.*, 244 A.2d 920, 923 (1968); *Smith v. Mallick*, 514 F.3d 48, 51 (D.C. Cir. 2008); *U.S. Nat'l Bank v. Madison Nat'l Bank*, 355 F.Supp. 165, 169 (D.D.C. 1973), *aff'd*, 489 F.2d 1273 (1974); *Ned Chartering & Trading, Inc. v. Republic of Pakistan*, 294 F.3d 148, 153 (D.C. Cir. 2002).

If, within the meaning of the Uniform Commercial Code, NCRIC is treated as the "account debtor" of Columbia Hospital with respect to the NCRIC Judgment and if an execution lien is treated as an "assignment," then under D.C. Code § 28:9-404 (formerly § 28:9-318), the execution liens here were subject to NCRIC's right of setoff if in existence at the time of the service of the

execution writs.[11]  But the result would be the same under the

common law or the statute,[12] and accordingly it is unnecessary to

decide whether § 28:9-404 applies.

In any event, even if the execution liens are not viewed as

assignments, the rationale of the decisions addressing the

primacy of an existing right of setoff over a later assignment

logically applies to execution liens as well.  Two decisions that

failed to acknowledge any of the decisions regarding the

effectiveness of setoff against an assignment nevertheless

reached the inherently obvious conclusion that under the law of

the District of Columbia, an execution lien is subject to the

setoff rights of the garnishee that existed at the time of

execution.  *See Tri-State Envelope of Md. v. Americans With Hart,*

---

[11]  Under D.C. Code § 28:9-109(d)(10), Article 9, Uniform
Commercial Code - Secured Transactions, generally does not apply
to a right of setoff.  One exception is that D.C. Code § 28:9-404
applies with respect to defenses or claims of an account debtor.
Section 28:9-404 (formerly § 28:9-318) provides in relevant part
that:

> the rights of an assignee are subject to:
>      (1) All terms of the agreement between the account
> debtor and assignor and any defense or claim in
> recoupment arising from the transaction that gave rise to
> the contract; and
>      (2) Any other defense or claim of the account debtor
> against the assignor which accrues before the account
> debtor receives a notification of the assignment
> authenticated by the assignor or the assignee.

[12]  *See Hudson Supply & Equip. Co. v. Home Factors* Corp.,
210 A.2d at 838 n.1 (citing former D.C. Code § 28:9-318, a
provision that was effective after the transactions at issue in
that case, as supporting its decision under the common law).

38

*Inc.*, 688 F.Supp. 769, 772 (D.D.C. 1988); *Baltimore and Assoc., Inc. v. Mun. Escrow & Title Co.*, 625 F.Supp. 1271, 1272 (D.D.C. 1985).

Columbia Hospital's assertion that NCRIC's claim to setoff is subordinate to the claims of all secured creditors depends upon when NCRIC's right of setoff accrued.  NCRIC acquired the J&C Judgment in October 2003.  At that moment, it became a creditor of Columbia Hospital to whom it was itself indebted.  Accordingly, NCRIC's right of setoff as a defense to Columbia Hospital's claims against it arose in October 2003.  This follows from the observation that "[t]he right of setoff arises when two parties are mutually debtor and creditor of each other." *Birman v. Loeb*, 64 Cal. App.4th 502, 518, 75 Cal. Rptr.2d 294 (1998) (citation omitted).  *See also Hudson Supply & Equip. Co.*, 210 A.2d 838.  A caveat to this observation, a caveat that has no consequence here, is that a debt sometimes does not qualify for

setoff if it is unmatured, unliquidated, or contingent.[13]   In this case, Columbia Hospital's obligation to NCRIC was already in existence and fully liquidated once NCRIC acquired the J&C Judgment in 2003.   The right of setoff thus arose at that time.

A creditor's right of setoff is in existence when the creditor holds a judgment claim even if its existing debt to the judgment-debtor has not yet been reduced to judgment.   In any event, the NCRIC Judgment was entered in February 2004, prior to any of the execution writs being served on NCRIC.   By then, both NCRIC and Columbia Hospital had a right to set off amounts owed under the NCRIC Judgment against the amounts owed under the J&C Judgment.

That the NCRIC Judgment was stayed may have delayed the necessity of NCRIC's asserting the right of setoff of the J&C Judgment against the NCRIC Judgment, but the right of setoff

---

[13]   *Compare Rhodes v. Bowling Green White Stone Co. of Ky.*, 43 App.D.C. 298, 1915 WL 20921 (D.C. Cir. 1915) (right of setoff as defense to garnishment did not apply to unliquidated and contingent claims of garnishee against the judgment debtor); *Prince v. West End Install'n Serv., Inc.*, 575 S.W.2d 831, 832-33 (Mo. App. 1978) (bank's right of setoff against its deposit account obligation does not accrue until depositor's debt to it is in default), *with Brownley v. Peyser*, 98 F.2d 337, (D.C. Cir. 1938) (cross-claims, "whether liquidated or unliquidated, may be enforced by way of set-off, whenever the circumstances are such as to warrant the interference of equity to prevent wrong and injustice. * * * By the decided weight of authority it is settled that the insolvency of the party against whom the set-off is claimed is a sufficient ground for equitable interference." quoting *North Chicago Rolling-Mill Co. v. St. Louis Ore & Steel Co.*, 152 U.S. 596, 615-16 (1894) ).

nevertheless existed.   Accordingly, NCRIC's right to set off the
amounts owed under the J&C Judgment against the amounts it owed
under the NCRIC Judgment was in existence when the execution
writs were served upon it, and the right of setoff is effective
against and takes priority over those execution liens.

That result is unaltered by the intervention of bankruptcy.
The right of setoff is preserved by 11 U.S.C. § 553(a), and 11
U.S.C. § 506(a)(1) provides that "[a]n allowed claim of a
creditor . . . that is subject to setoff under section 553 of
this title, is a secured claim . . . to the extent of the amount
subject to setoff. . . ."  As such, the Bankruptcy Code elevates
what would otherwise be an unsecured claim into a secured claim
with priority over unsecured claims.  *See In re Koch*, 224 B.R. at
575.  If NCRIC's rights in the NCRIC Judgment proceeds are
thereby elevated over the rights of the execution lien creditors,
it is because the Code in concert with state law so provides.

C

*NCRIC did not Waive its Right of Setoff*

1.   *NCRIC's failure to file a proof of claim as to the J&C
     Judgment does not constitute a waiver of the right of
     setoff.*

"Ordinarily, a waiver requires an intentional relinquishment
of a known right . . . ."  *Grunley Const. Co. v. District of
Columbia*, 704 A.2d 288, 291 n.5 (D.C. 1997).  Although a claim to
setoff can be waived, *see In re Ronnie Dowdy, Inc.*, 314 B.R. 182,

41

189-90 (Bankr. E.D. Ark. 2004), the court concludes that NCRIC
has not done so in this case, and even if NCRIC had been required
to file a proof of claim to preserve its setoff rights (which it
was not), Columbia Hospital is estopped from defending on that
basis, or alternatively, NCRIC's failure to file a proof of claim
for setoff purposes was excusable neglect.[14]

Although failure to file a proof of claim may preclude NCRIC
from asserting any right to distribution under the plan, it does
not bar NCRIC from asserting a right of setoff defensively in a
turnover proceeding. *See* 5 Collier on Bankruptcy ¶ 553.07[1]
(16th ed. 2011);[15] *In re Silverman Laces, Inc.*, 404 B.R. 345,
365-66 (Bankr. S.D.N.Y. 2009) (addressing a setoff raised as an
affirmative defense, and concluding that "[t]he clear majority

---

[14]   The court's finding of excusable neglect is limited to
NCRIC's right to assert setoff, and does not extend to NCRIC's
right to assert a claim to distribution under the confirmed plan.
Because I conclude that NCRIC had a fully secured right of setoff
unless champerty applies, the issue of whether NCRIC would be
entitled to file a late proof of claim for any unsecured claim is
moot.  If NCRIC's right of setoff is disallowed based on
champerty, its unsecured claim as well would have to be
disallowed based on champerty.

[15]   "In general, a creditor must file a proof of claim in
order to participate in any distribution from a debtor's
bankruptcy estate.  It does not necessarily follow, however, that
a creditor who fails to file a proof of claim thereby waives a
right of setoff for all purposes.  The prevailing view is that
the failure to file a proof of claim does not prevent the
creditor from asserting the right as a defensive matter, although
the creditor may be barred from collecting a dividend with
respect to the amount of the claim that exceeds the creditor's
offsetting debt to the debtor."  5 Collier on Bankruptcy ¶
553.07[1] (16th ed. 2011)

and better view [] is that filing a proof of claim is not a
prerequisite to asserting an otherwise valid setoff.").
Moreover, given Columbia Hospital's active participation in the
setoff litigation prior to the claims bar date, and the benefit
it derived from the consensual resolution of those proceedings,
the court finds that Columbia Hospital is estopped from defending
on the grounds that NCRIC failed to file a formal proof of claim
asserting setoff.

The bar date of Rule 3003(c)(3) serves "the important
purpose of enabling the parties to a bankruptcy case to identify
with reasonable promptness the identity of those making claims
against the bankruptcy estate and the general amount of the
claims, a necessary step in achieving the goal of successful
reorganization." *In re Caritas Health Care, Inc.*, 435 B.R. 111
(Bankr. E.D.N.Y. 2010), quoting *First Fid. Bank, N.A., N.J. v.
Hooker Invs., Inc., (In re Hooker Invs., Inc.)*, 937 F.2d 833, 840
(2d Cir. 1991), and NCRIC's timely assertion of its right to
setoff in this case is consistent with the spirit of Rule 3003.

The bar date for filing proofs of claim in Columbia
Hospital's bankruptcy case was May 18, 2009.  On or about
February 13, 2009, however, counsel for NCRIC advised counsel for
Columbia Hospital that NCRIC was claiming a setoff against the
NCRIC Judgment on account of the J&C Judgment, and on March 11,
2009, Columbia Hospital commenced this adversary proceeding

43

seeking, *inter alia*, declaratory judgment as to NCRIC's right to setoff.  Finally, on March 20, 2009, NCRIC filed a Motion for Relief From Automatic Stay to Assert Setoff based upon the J&C Judgment (Dkt. No. 139, Case No. 09-00010).  The parties resolved the lift stay motion by consent, which was implemented in part by way of a joint motion, filed April 20, 2009, seeking approval of proposed summary trial procedures for litigating the validity of NCRIC's asserted right of setoff.  On April 28, 2009, the court entered an order granting that motion, and the parties proceeded accordingly.  All of this having transpired before the claims bar date, and Columbia Hospital having agreed to the summary trial procedures and having likewise benefitted from the consensual resolution of NCRIC's lift stay motion,[16] Columbia Hospital is estopped from now complaining that NCRIC failed to assert its setoff rights by way of a formal proof of claim.

It is also significant that Columbia Hospital's confirmed Amended and Modified Chapter 11 Plan of Reorganization expressly acknowledges NCRIC's asserted setoff rights, and states that the disputed funds will be available for distribution only to the extent Columbia Hospital prevails in this adversary proceeding. *See* Confirmed Plan ¶ 6.4 (Dkt. No. 229, Case No. 09-00010). Consistent with the proceedings that preceded confirmation of the

---

[16]   The resulting consent order enabled Columbia Hospital to recover all of the NCRIC Judgment proceeds less the disputed setoff funds without further delay.

plan, the debtor structured its reorganization to account for NCRIC's disputed setoff rights. In short, requiring NCRIC to file a proof of claim would have served no purpose in Columbia Hospital's bankruptcy case.

Even if the court concluded that NCRIC was bound by the claims bar date and NCRIC were to then seek leave to file a proof of claim out of time, under the circumstances, the court would find that the failure timely to file a proof of claim was excusable neglect. Indeed, it would be disingenuous for Columbia Hospital to complain that it is somehow prejudiced by the length of delay, that NCRIC acted in bad faith, or that failure to assert the setoff claim in a formal proof of claim had any impact on these proceedings. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993).[17]

---

[17] "Although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute "excusable" neglect, it is clear that "excusable neglect" . . . is a somewhat "elastic concept" and is not limited strictly to omissions caused by circumstances beyond the control of the movant. . . . the determination [of whether neglect is excusable] is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include . . . the danger of prejudice to the [non-moving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer Inv. Servs. Co.,* 507 U.S. at 392, 395.

2.   *Failure of NCRIC to assert the right of setoff in a prior proceeding did not constitute waiver.*

The court rejects Columbia Hospital's contention that NCRIC's failure to exercise its alleged right of setoff in other proceedings constitutes a waiver of NCRIC's right to exercise setoff in these proceedings.  First, Columbia Hospital complains that NCRIC failed to raise setoff in the NCRIC Litigation.  Until January 5, 2009, when the Court of Appeals denied NCRIC's petition for rehearing and rehearing en banc, NCRIC was still seeking to have the NCRIC Judgment overturned.  Columbia Hospital filed for bankruptcy relief the following day.

NCRIC having posted a supersedeas bond, execution on the NCRIC Judgment was stayed during the pendency of the appeal. Stip. Facts ¶ 31.  Unlike a challenge to the validity of the judgment itself, an exercise of the right of setoff is a challenge to the amount that is collectible on an otherwise valid judgment.  Although NCRIC could have raised the issue while it was seeking to have the NCRIC Judgment overturned, the court finds that failure to do so in the NCRIC Litigation, given NCRIC's ongoing challenge to the validity of the underlying judgment, does not evidence an intent on NCRIC's part to waive any setoff rights.  Similarly, the court is unpersuaded that NCRIC waived its right of setoff by not asserting it in response to attachment or garnishment actions filed by Columbia Hospital's creditors against the NCRIC Judgment.  As long as NCRIC was

46

engaged in proceedings challenging the validity of the judgment
itself, it would be premature to require NCRIC to assert a right
of setoff.

Finally, the court rejects Columbia Hospital's contention
that NCRIC's failure to assert the right of setoff in the
interpleader action is indicative of waiver.  The interpleader
action was filed on the petition date and was almost immediately
stayed due to the commencement of this bankruptcy case.  The
interpleader action never got off its feet, and had it not been
almost immediately stayed, NCRIC would have had ample opportunity
to amend its pleadings to address any asserted right of setoff.
The court does not think much can be inferred from what did or
did not transpire in that proceeding.

In short, although NCRIC may have had opportunities in prior
proceedings to express its intent to claim a right of setoff, the
court finds that it was not required to do so in order to
preserve the right and prevent a finding of waiver in these
proceedings.

D

*The Court Will not Exercise its Equitable Power to Deny Setoff*

The court may exercise its equitable discretion to disallow
setoff if circumstances so warrant.  *See In re Lykes Bros. S.S.
Co.*, 217 B.R. 304, 313 (Bankr. M.D. Fla. 1997); *Brown & Cole
Stores, LLC v. Assoc'd Grocers, Inc. (In re Brown & Cole Stores,*

47

*LLC)*, 375 B.R. 873, 879 (B.A.P. 9th Cir. 2007).  *But see In re Krause*, 261 B.R. 218, 223 (B.A.P. 8th Cir. 2001) (rejecting the proposition that setoff rights can be modified due to "compelling circumstances" and holding that [t]he only exceptions to the rule that a creditors' [sic] right to setoff remains unaffected in bankruptcy are those found in section 553.").  Columbia Hospital contends that setoff under the Bankruptcy Code is permissive, not mandatory, and the court has the discretion to deny a creditor's claim of setoff based upon equitable considerations.  Columbia Hospital's Opening Br., at 14 (Dkt. No. 32), citing *In re Cascade Roads, Inc.*, 34 F.3d 756, 762 (9th Cir. 1994); 9C Am. Jur. 2d *Bankruptcy* § 2739; *In re Hancock*, 137 B.R. 835, 839 (Bankr. N.D. Okla. 1992); *In re Prudential-Bache Sec., Inc.*, 105 B.R. 321, 336 (Bankr. E.D. Va. 1989); *Illinois v. Lakeside Cmty. Hosp., Inc. (In re Lakeside Cmty. Hosp., Inc.)*, 151 B.R. 887, 893 (N.D. Ill. 1993).  Columbia Hospital advances two reasons for the court to deny setoff in the court's discretion.

Columbia Hospital contends, first, that the court should exercise its equitable discretion to deny NCRIC's asserted right of setoff given NCRIC's use of the J&C Judgment to gain a litigation advantage in the NCRIC Litigation, and the likelihood that NCRIC acquired the judgment solely for that purpose.  The court has already found that NCRIC did not have a sole purpose in acquiring the J&C Judgment to gain a litigation advantage or to

48

attempt to extract a favorable settlement from Columbia Hospital in the NCRIC Litigation.  *See* Find. of Fact ¶ 56.  NCRIC recognized that it faced the potential of an adverse ruling in the NCRIC Litigation, and in acquiring the J&C Judgment, NCRIC necessarily was aware that it was obtaining a right of setoff. Thus, NCRIC could have calculated that it would be able to use every dollar of the J&C Judgment as a setoff against the NCRIC Judgment at a cost to it of only 50 cents per dollar.[18]

To the extent that NCRIC *did* acquire the J&C Judgment to gain a litigation advantage in the NCRIC Litigation, that asserted abuse is now ancient history, NCRIC having ceased discovery efforts regarding the J&C Judgment after entry of the NCRIC Judgment on February 20, 2004.  Moreover, the Superior Court had tools available to it to prevent NCRIC from using its acquisition of the J&C Judgment as an end-run around the limitations on discovery in the NCRIC Litigation or as a form of harassment to put pressure on Columbia Hospital to settle the NCRIC Litigation.  Judge Duncan-Peters was made aware of Columbia Hospital's belief that NCRIC's pursuit of discovery in the J&C

---

[18]  Although NCRIC would likely be barred from asserting its right of setoff in this proceeding had Columbia Hospital filed its bankruptcy petition within 90 days of the assignment of the J&C Judgment, 11 U.S.C. § 553(a)(2)(B), NCRIC may have calculated (correctly) that Columbia Hospital would *not* file a bankruptcy petition within 90 days of NCRIC's acquiring the judgment, in which event § 553(a)(2)(B) would not invalidate the right of setoff.

litigation was improper, and the discovery was nevertheless
permitted to proceed.[19]   NCRIC ceased the objectionable conduct
after the NCRIC Judgment was entered on February 20, 2004, and at
that juncture the primary value of the NCRIC Judgment to NCRIC
was the right of setoff, a right it still held undisturbed when
this bankruptcy case commenced in 2009.   During the intervening
years, there is no evidence that Columbia Hospital challenged
NRIC's right to enjoy that right of setoff.   Even if NCRIC
behaved inequitably by acquiring the J&C Judgment to gain a
litigation advantage in the NCRIC Litigation, the court is not
persuaded that this is sufficient to deprive NCRIC of setoff
rights whose preservation is expressly provided for in the
Bankruptcy Code.   To the extent the court has the power to deny
setoff on equitable grounds, it will not do so on the basis of
NCRIC having acquired the judgment to obtain a litigation
advantage.

Columbia Hospital contends, second, that "allowing NCRIC to
assert a setoff would allow NCRIC to recover 100% of its
unsecured claim in a liquidation case in which other unsecured
creditors are receiving pennies on the dollar and would allow

---

[19]   In a letter to Judge Duncan-Peters, the Superior Court
judge presiding over the J&C Litigation, dated November 6, 2003,
Michael Barch advised Judge Duncan-Peters of Columbia Hospital's
belief that NCRIC was using the J&C Assignment as an end-run
around at discovery that had been denied to NCRIC elsewhere (Exh.
22).   The Superior Court nevertheless issued orders permitting
the discovery to go forward.

NCRIC to elevate its unsecured claim above those of secured claimants in this bankruptcy case - specifically, Artulies K. Smith, Karin N. Barnes, and Michelle Hutchinson, Class 9, 10 and 11 claimants in this bankruptcy case - whose secured claims will be, in effect, reduced by any setoff NCRIC is permitted to effect." Columbia Hospital's Opening Br., at 20-21 (citing *In re Hancock*, 137 B.R. 835 (Bankr. N.D. Okla. 1992)). The court rejects that argument.

In 11 U.S.C. § 553(a), Congress set forth exceptions to the general rule that the Bankruptcy Code does not affect a setoff right of the character that NCRIC enjoys. For example, in § 553(a)(2), Congress provided some protection to other creditors when a right of setoff is acquired within 90 days of the petition date. This prevents creditors from strategically obtaining setoff rights in anticipation of a debtor's bankruptcy. NCRIC, however, acquired the J&C Judgment years before Columbia Hospital filed its petition commencing this case, rendering the exception inapplicable. And with exceptions of no applicability here, § 553(a) contemplates that the rules of distribution that would otherwise apply must yield to setoff rights arising under state law, *see, e.g.*, *CDI Trust v. U.S. Elecs., Inc. (In re Commc'n Dynamics, Inc.)*, 382 B.R. 219, 228 (Bankr. D. Del. 2008). Even though other creditors would benefit from a denial of NCRIC's right of setoff, that is not, in and of itself, a legitimate

basis for denying valid setoff rights.[20]   To repeat, NCRIC's rights in the NCRIC Judgment proceeds are elevated over the rights of other creditors in those proceeds because the Bankruptcy Code in concert with state law so provides.

The court further observes that the misconduct complained of by Columbia Hospital does not involve an attempt on NCRIC's part to manipulate priorities in Columbia Hospital's bankruptcy case, one of the chief concerns this court has when evaluating the

---

[20]   As observed by the Bankruptcy Court for the District of Delaware:

> Equity does not mandate that one creditor lose rights it has under state law and the Bankruptcy Code simply because other creditors will benefit by that loss. . . . *See, e.g., B & L Oil*, 782 F.2d at 157 ("In bankruptcy, both recoupment and setoff are sometimes invoked as exceptions to the rule that all unsecured creditors of a bankrupt stand on equal footing for satisfaction. Recoupment or setoff sometimes allows particular creditors preference over others."); *Lee v. Schweiker*, 739 F.2d 870, 875 (3d Cir. 1984) ("Setoff, in effect, elevates an unsecured claim to secured status, to the extent that the debtor has a mutual, pre-petition claim against the debtor."); *Express Freight Lines, Inc. v. Kelly (In re Express Freight Lines, Inc.)*, 130 B.R. 288, 291 (Bankr. E.D. Wis. 1991) (noting that "Bankruptcy Courts have consistently allowed setoff even though this right is 'at odds with the fundamental bankruptcy principle of equality of distribution among creditors because it permits a creditor to obtain full satisfaction of a debt by extinguishing an equal amount of the creditor's obligation to the debtor.' Courts have allowed this right because without it, it would be unfair to require a creditor to pay in full what is owed to the debtor only to receive a portion, if that, of its claim against the debtor.").

*In re Commc'n Dynamics, Inc.*, 382 B.R. at 228.

52

equities.

E

*Champerty*

Columbia Hospital argues that the assignment of the J&C
Judgment is unenforceable under the doctrine of champerty.  For
reasons explained below, the assignment was not champertous on
its face.  Columbia Hospital argues, however, that champerty
nevertheless applies because the assignment was improperly
motivated by NCRIC's desire to use the judgment to pursue
discovery that was unavailable to NCRIC in the NCRIC Litigation,
and to put pressure on Columbia Hospital to settle the NCRIC
Litigation.  The court concludes that although there is evidence
that might support a finding of champerty, Columbia Hospital
forfeited its champerty defense by not raising it with the
Superior Court, and, in any event, failed properly to plead this
affirmative defense.

1.   *The champerty doctrine.*

Champerty is an ancient common law doctrine.  "'Champerty' is
a species of maintenance, being a bargain with a plaintiff or
defendant to divide . . . [the] matter being sued for between
them if they prevail at law; whereupon the champertor is to carry
on the suit at his own expense."  *Johnson v. Van Wyck*, 4 App.
D.C. 294, 1894 WL 12005 (D.C. Cir. Nov. 5, 1894).  For example,
the champerty doctrine "seeks to prevent an attorney from

53

speculating in lawsuits and gambling in litigation at his or her own expense."[21]  *Marshall v. Bickel*, 445 A.2d 606, 608 (D.C. 1982).

Historically, the prohibition against champerty was largely aimed at preventing attorneys from filing lawsuits for the purpose of obtaining fees.  *See In re IMAX Securities Litigation*, 2011 WL 1487090, at *4 (S.D.N.Y. April 15, 2011).  It is thus not surprising that, as noted by the *Bickel* court, the majority of District of Columbia cases to address champerty involve agreements between attorneys and their clients.  *See Bickel,* 445 A.2d at 608; *Golden Commissary Corp. v. Shipley*, 157 A.2d 810, 814 (D.C. 1960); *Merlaud v. Nat'l Metro. Bank*, 84 F.2d 238, 240 (D.C. Cir. 1936).  Unfortunately, cases involving attorney-client agreements are of limited utility when analyzing agreements that do not involve assignments to an attorney, such as the NCRIC assignment.  *See Design for Bus. Interiors v. Herson's, Inc*., 659 F. Supp. 1103 (D.D.C. 1986) (discussing the limited utility of applying law arising out of champerty cases involving attorneys when an attorney is not a party to the agreement at issue).  Notwithstanding the limited purpose of the original doctrine, champerty is not only applicable to client-attorney assignments,

---

[21]  For a history of the doctrine of champerty, see *Bluebird Partners, L.P. v. First Fid. Bank*, N.A.,94 N.Y.2d 726, 733-34 (N.Y. 2000)*.  See also In re IMAX Securities Litigation*, 2011 WL 1487090, *4 (S.D.N.Y. April 15, 2011).

and "[i]f a contract is determined to be champertous, District of Columbia courts will not enforce it . . . ." *Marshall v. Bickel*, 445 A.2d at 609. *See also Koro Co. v. Bristol-Myers Co.*, 568 F. Supp. 280, 287 n.2 (D.D.C. 1983) (finding an assignment of a claim between corporations champertous under New York law, and noting that the court's decision on the issue would be the same under District of Columbia law).[22]

---

[22] Unlike the District of Columbia, New York has codified the common law prohibition against champerty. *See* N.Y. Judiciary Law § 489, and consequently, New York is one of few jurisdictions to possess a well-developed body of case law addressing the ancient doctrine. Although at least one court has expressed the view, in dicta, that D.C. law is "consonant with New York law on the issue of champerty," *see Bristol-Myers*, 568 F. Supp. at 287 n.2, decisions applying N.Y. Judiciary Law § 489 rely on statutory language that is unique to New York, and this court is mindful that differences remain between the laws of these two jurisdictions.

Under N.Y. Judiciary Law § 489, assignments that are taken "with the intent and for the purpose of bringing an action or proceeding thereon" are prohibited as champertous. New York courts have interpreted this to mean that for an assignment to be champertous, "the foundational intent to sue on that claim must at least have been the primary purpose for, if not the sole motivation behind, entering into the transaction. *Bluebird Partners, L.P. v. First Fid. Bank, N.A.*, 731 N.E.2d 581, 587 (N.Y. App. 2000). An assignee's intent with respect to an allegedly champertous assignment, in turn, often presents a triable issue of fact not suitable for resolution on summary judgment under New York law. Notwithstanding that champerty continues to be a valid defense under D.C. law, this court has found no case law to support the view that D.C. has adopted New York's articulation of the intent standard that applies under § 489. Nevertheless, the court finds that an assignee's intent remains a critical element of a finding of champerty under D.C. law. It is unnecessary for this court to reach the question of whether D.C. courts would adopt the same intent standard as New York because the court concludes that Columbia Hospital has not properly pled the defense.

2.   *The assignment was not champertous on its face.*

Judgments are freely assignable under District of Columbia law, *see* D.C. Code § 28-2301, and such assignments are not, on their face, champertous.  Even before the enactment of D.C. Code § 28-2301, District of Columbia courts acknowledged that the outright assignment of a property right does not, on its face, constitute champerty.  In the case of *Johnson v. Van Wyck*, for example, the court found that an assignment to a non-attorney of a share of a future judgment was barred as champertous. Significantly, for our purposes, the court noted that an outright assignment of a property right, as opposed to the conveyance of a naked right to bring an action to enforce the property right, would not fall afoul of champerty.  *Johnson v. Van Wyck*, 1894 WL 12005 at *14*, citing *Traer v. Clews*, 115 U.S. 528 (1885).  Here, the conveyance to NCRIC of the J&C Judgment was an outright conveyance of a property right, not merely a conveyance of a naked right to bring an action.  The fact that a collection action may be necessary to recover on a judgment does not, alone, render the assignment champertous, and any doubt on this score is removed by D.C. Code § 28-2301, which expressly provides that upon the assignment, "the assignee may maintain an action or sue out an execution on the judgment in his own name, as the original plaintiff might have done."

Nor does the fact that Jackson & Campbell is to be paid

fifty percent of any recovery by NCRIC render the assignment champertous on its face.  This, too, is supported by the reasoning of *Johnson v. Van Wyck,* which cites favorably to *Brown v. Bigne*, 28 P. 11 (Or. 1891), as an example of a case involving a contract in aid of litigation that ought *not* be deemed void as champertous. *Id.*  In *Brown v. Bigne*, Brown "advanced the money to enable [Bigne] to prosecute his claim, upon no other security for its repayment than the assignment of a one-half interest in the property in litigation."  28 P. at 12.  This was held not to be champertous, just as NCRIC's promise to pay Jackson & Campbell 50% of any amounts recovered does not render the J&C Assignment champertous.

However, as noted in *Johnson v. Van Wyck*, 1894 WL 12005, at 14, the court in *Brown v. Bigne*, 28 P. at 13, went on to observe:

> when such contracts are made for the purpose of stirring up strife and litigation, harassing others, inducing suits to be begun which otherwise would not be commenced, or for speculation, they come within the analogy and principles of that doctrine, and should not be enforced.

In other words, although not champertous on its face, otherwise permissible assignments can nevertheless run afoul of champerty if executed for the wrong purpose, as was found to be the case in *Johnson v. Van Wyck*.  In *Johnson v. Van Wyck*, the court found that, under the circumstances of the case (a speculative syndication of the prospective proceeds of the litigation), the arrangement at issue offended public policy and would not be

enforced.[23]  Circumstances of that character are not present in

this case, however.  Here, the conveyance to NCRIC assured NCRIC

of a right of setoff if it lost the NCRIC Litigation, and at the

same time promised to Jackson & Campbell a 50% recovery if setoff

occurred, a recovery that it might not otherwise enjoy, and if

NCRIC's discovery efforts uncovered assets that might be seized

to collect the judgment, Jackson & Campbell would benefit as well

from a collection from those assets to satisfy the judgment.

A second District of Columbia decision in which an

---

[23]  In *Johnson v. Van Wyck*, the plaintiff Johnson stood in
the shoes of Lorin Blodget to whom the heirs of a decedent had
granted authority, *at his own expense*, to prosecute various
claims in exchange for a one-half interest in the proceeds of the
claims.  1894 WL 12005, at *1.  After the initial agreement with
Lorin Blodget had been reached,  he "organized a trust or
syndicate or lottery (whichever it may appropriately be called),
the sole asset of which consists of his prospective share of the
results of the proposed litigation," with investors able to
participate in Lorin Blodget's share of the proceeds of the
litigation by purchasing certificates (in an aggregate amount of
$240,000).  *Id.* at *13.  The court held that the arrangement
savored strongly of champerty and public mischief, and ought not
be enforced, stating:

> Contracts for the prosecution of harassing litigation,
> which would not otherwise be instituted, and upon
> speculation in a spirit of gambling, shares in which may
> be thrown upon the market to be disposed of to chance
> buyers, like tickets in a lottery, ought to receive the
> condemnation of the courts of this District when brought
> to their attention in a proper manner. To encourage the
> formation of syndicates or trusts for the purpose of
> maintaining litigation like this . . . could have none
> but a most mischievous effect.

*Id.* at *16.

assignment to a non-attorney was declared void as champertous is

*Merlaud v. Nat'l Metro. Bank*.   There, Merlaud located heirs of an

estate who were unaware of their inheritance.   Merlaud persuaded

them to grant him a one-third share of their interest in the

decedent's estate in exchange for his agreeing to prosecute their

rights and to bear all of the expenses of such pursuit, including

attorney's fees, except to the extent that there was a recovery.

The Court of Appeals ruled that champerty barred Merlaud's

efforts to enforce the contract against the heirs, stating:

> By the common law prevailing in this District an
> agreement by an attorney at law to prosecute at his own
> expense a suit to recover land in which he personally has
> and claims no title or interest in consideration of
> receiving a certain portion of what he may recover is
> unlawful and void for champerty. *Peck v. Heurich*, 167
> U.S. 624, 17 S.Ct. 927, 930, 42 L.Ed. 302.   In the
> instant case Merlaud was to receive repayment of any and
> all sums so paid by him from such sum as might be awarded
> the Hunters "from the said estate," and to be paid a
> commission "on the amount got in and recovered."   As the
> court observed in the *Heurich Case*, "if this be not
> champerty, we fail to see wherein there can be
> champerty." **The character of the enterprise on the part
> of Merlaud was plainly speculative**, and the agreement he
> is seeking to enforce is champertous and void.

84 F.2d at 240 (emphasis added).   The *Merlaud* decision is

distinguishable in that it rested on a finding of speculation, a

factor not present here.   As such, it does little to inform the

question of whether the assignment at issue in this proceeding

ought to be deemed champertous.   The J&C Judgment was a fully

adjudicated claim, entailing no speculation as to what was owed,

and the judgment was freely assignable under District of Columbia

statutory law, and fully enforceable in the hands of NCRIC.
Moreover, as already discussed with respect to the issue of
mutuality, the assignment was of outright ownership of the J&C
Judgment.

For all of these reasons, the court concludes that the
assignment to NCRIC of the J&C Judgment is not champertous on its
face.[24]

3.  *Had it been raised in the Superior Court, Columbia
Hospital might have had a valid champerty defense based
on the allegedly improper purposes NCRIC had in
acquiring the J&C Judgment*

If champerty applies at all, therefore, it applies because
of the allegedly improper purposes for which NCRIC acquired the
J&C Judgment.  Notwithstanding the availability of Rules of Civil
Procedure better tailored to combat the abuses complained of
here, the champerty doctrine (based on acquiring a litigation
claim in order to harass an opponent or to stir up strife and

---

[24]  Nevertheless, as noted by the court in *Johnson v. Van
Wyck*, 1894 WL 12005, at *14, "when such contracts are made for
the purpose of stirring up strife and litigation, harassing
others, inducing suits to be begun which otherwise would not be,
or for speculation, they come within the analogy and principles
of that doctrine, and should not be enforced," quoting *Brown v.
Bigne*, 28 P. at 13.

litigation) remains a valid defense.[25]

The record, as it currently stands, includes evidence to support the inference that the J&C Assignment Agreement was motivated, at least in part, by NCRIC's desire to pursue discovery against the debtor to assist NCRIC's defense in the NCRIC Litigation.[26]  Prior to the assignment, NCRIC was a stranger to the J&C Litigation, and shortly after the assignment was executed, NCRIC commenced post-judgment enforcement proceedings against Columbia Hospital and its principals in the J&C Litigation by, among other things, filing discovery motions, taking discovery, and serving subpoenas and other documents upon the former directors and officers of Columbia Hospital.  *See* Stip. Facts ¶¶ 15, 20.

The stipulated exhibits include Debtor's Exhibit 15, which is the first page of an email exchange between attorneys for

---

[25]  Some jurisdictions have abolished the defense of champerty in favor of modern tools better suited to combat speculative and frivolous litigation.  *See Osprey, Inc. v. Cabana Ltd. P'ship*, 532 S.E.2d 269, 277 (S.C. 2000) (abolishing the defense of champerty  because "other well-developed principles of law can more effectively accomplish the goals of preventing speculation in groundless lawsuits and the filing of frivolous suits than dated notions of champerty."); *Saladini v. Righellis*, 687 N.E.2d 1224, 1226-27 (Mass. 1997) (concluding that champerty is no longer needed to protect against the evils it sought to prevent because "[t]here are now other devices that more effectively accomplish these ends.").

[26]  The court notes, however, that the assignment also conferred upon NCRIC a non-trivial economic benefit, namely, the right to one-half of any gross sums recovered on account of the judgment.

NCRIC and Jackson & Campbell in which an attorney for NCRIC

states as follows: "My client has asked that I contact you again

concerning the assignment materials I sent over 10 days ago.

While I certainly do not mean to be pushy, the utility to my side

. . . ." I decline to draw an adverse inference based upon

NCRIC's alleged failure to produce the balance of the email.[27]

Nevertheless, the document invites the permissible inference that

the assignment of the J&C Judgment was desired by NCRIC for

---

[27] Columbia Hospital complains that NCRIC did not produce
the second page of the email, and given that the email exchange
stops mid-sentence at the bottom of the page that was produced,
it is fair to assume that the exhibit is missing a portion of the
email exchange. Columbia Hospital contends that it is entitled
to an inference construing the email against NCRIC given NCRIC's
failure to produce any additional pages relating to this email.
*See* Dkt. No. 32 at 11 n.5. Columbia Hospital has not brought a
motion to compel, however, and there has not been a showing that
NCRIC improperly withheld the document(s) in question. Instead,
Columbia Hospital directs the court to a letter from Columbia
Hospital's attorney demanding that NCRIC produce the remainder of
the email, *see* Stip. Exh. 66, and NCRIC's attorney's response
explaining that NCRIC intends to produce all responsive non-
privileged documents. *See* Stip. Exh. 67. The record does not
show that Columbia Hospital pursued the issue further, and it is
inappropriate for a court to draw an adverse inference based upon
a party's non-production of a document that is not being
wrongfully withheld. *See Crawford v. Franklin Credit Mgmt.
Corp.*, 2011 WL 1118584, at *7-8 (S.D.N.Y. March 23, 1011); *Crosby
v. U.S. Dept. of Labor*, 53 F.3d 338 (9th Cir. 1995) (unpublished
disposition).

reasons extending beyond mere collection.[28]  Because the court

concludes that Columbia Hospital failed properly to plead

champerty as a defense, however, and because NCRIC did not have

fair notice of the need to present evidence as to this issue, I

will not make findings pertaining to whether the assignment was

for improper purposes.

NCRIC contends that judgments, unlike claims that have yet

to be reduced to judgment, are immune from the defense of

champerty.  Citing to *Corpus Juris Secundum*, NCRIC contends that

champerty applies only to the assignment of choses in action, not

the assignment of judgments. *See* 14 C.J.S. Champerty § 6 (2010)

("champerty does not apply to complete assignments or sales, nor

to assignments of judgments") (relying on dicta from the case of

*Mall v. LaBow*, 635 A.2d 871, 873 (Conn. App. 1993)).  Enforcement

---

[28]  Columbia Hospital urges that NCRIC was aware that
Columbia Hospital lacked the resources to satisfy the judgment,
and as such, the court must infer that NCRIC's only purpose for
taking the assignment was to harass Columbia Hospital by pursuing
discovery in the J&C Litigation.  But the evidence in that regard
was Columbia Hospital's own representation to creditors that it
was insolvent, a representation that the holder of the J&C
Judgment was entitled to inquire into regarding its accuracy.
Even if Columbia Hospital was, in fact, judgment proof at the
time of the assignment, that did not render the judgment without
legitimate financial value in the hands of a party such as NCRIC.
At the time the assignment was made, NCRIC faced the prospect of
an adverse judgment in the NCRIC Litigation, making the assigned
judgment valuable as a possible setoff against such an adverse
judgment, whether in or outside of bankruptcy.  Thus, Columbia
Hospital's lack of resources does not require the court to
conclude that NCRIC's motives in acquiring the J&C Judgment were
simply to stir up strife and harass the debtor through
litigation.

of a judgment, however, gives rise to an independent cause of action, blurring the dispositive distinction NCRIC asks the court to draw between causes of action and judgments. *See Assoc'd Aviation Underwriters v. Wood*, 98 P.3d 572 (Ariz. Ct. App. 2004) ("Every judgment gives rise to a common law cause of action to enforce it, called an action upon a judgment." (internal citations and quotations omitted)).

Nevertheless, judgments are freely assignable, with the judgment fixing the amount of debt owed without the necessity of litigation, and enforceable in the hands of the assignee. It makes little sense that a transfer of a judgment will be champertous if the only "litigation" the assignee engages in is a resort to postjudgment discovery into assets from which the judgment may be collected. Holding champerty inapplicable to postjudgment discovery, however, would require a change in District of Columbia common law, a change that must come from the District of Columbia Court of Appeals.

>   4.   *Columbia Hospital has forfeited the champerty defense by not raising it in the postjudgment discovery proceedings regarding the J&C Judgment.*

NCRIC does not at this juncture seek to bring litigation to enforce the J&C Judgment. Instead, it seeks to exercise its right of setoff, an act that can be accomplished (if NCRIC is not barred from doing so) by a simple bookmaking entry without the necessity of litigation. On the other hand, if NCRIC acquired

the judgment for the purpose of engaging in discovery at its own expense and for an improper purpose, and the assignment is declared void as champertous for that reason, NCRIC has no right of setoff.

NCRIC contends that Columbia Hospital waived the champerty defense by failing to raise it when NCRIC undertook postjudgment discovery regarding the J&C Judgment.  Even if the original assignment was motivated, as least in part, by an improper purpose, NCRIC continues to hold the J&C Judgment for the legitimate purpose of asserting a right of setoff against the NCRIC Judgment.  It does seem unfair that this legitimate purpose can be defeated by invoking champerty several years after the assignment was made and after the allegedly improper discovery was concluded.  Nevertheless, if an assignment is champertous when made, it is void, and the mere passage of time or abandonment of improper purpose does not alter that result.

Columbia Hospital failed to assert champerty as a defense to the post-assignment enforcement of the J&C Judgment or as a defense to NCRIC's taking of discovery in the Superior Court. Judge Duncan-Peters was made aware through Michael Barch, one of Columbia Hospital's liquidating trustees, of Columbia Hospital's belief that NCRIC's pursuit of discovery in the J&C litigation was improper, and the discovery was nevertheless permitted to proceed.  Although Columbia Hospital ceased to be represented by

counsel in Jackson & Campbell's civil action after the J&C
Judgment was entered, it was free to obtain counsel if necessary
to raise champerty as a defense.  Moreover, if Judge Duncan-
Peters believed that the assignment was an invalid champertous
assignment given the impure motives Columbia Hospital imputed to
NCRIC, Duncan-Peters could have denied the requested discovery or
dismissed NCRIC, *sua sponte*, as lacking standing to enforce the
J&C Judgment, but she did not.  Judge Duncan-Peters' decision to
let NCRIC prosecute the enforcement action and engage in related
discovery is consistent with the law of the District of Columbia,
which provides that judgments are freely assignable, *see* D.C.
Code § 28-2301 ("A judgment or money decree may be assigned in
writing, and upon the assignment thereof being filed in the
clerk's office the assignee may maintain an action or sue out an
execution on the judgment in his own name, as the original
plaintiff might have done.").  When a party has an opportunity to
raise champerty as a defense in a proceeding, but fails to do so,
thus resulting in the entry of a judgment, it is too late to
raise champerty as a defense when the holder of the judgment
seeks to enforce the judgment.  *Long v. Page*, 29 Tenn. 541 (Tenn.
1850).  Similarly here, by failing to raise champerty in the
Superior Court and failing to convince the Superior Court that
there was an invalid purpose behind the postjudgment discovery
efforts that should bar the taking of the discovery, Columbia

Hospital allowed for entry of orders entitling NCRIC to discovery; any harm caused by allowing that discovery to proceed is beyond repair.  Regardless of whether improper purposes originally motivated the assignment, the J&C Judgment is now held by NCRIC only for a valid purpose, setoff, and the assignment cannot be set aside as champertous with respect to that purpose. Columbia Hospital forfeited the champerty defense by allowing the assignment to be put to the improper champertous purpose to which it belatedly points.  Had an appeal been taken from Judge Duncan-Peters' orders allowing the discovery, those orders would have been upheld because the defense of champerty had not been raised before Judge Duncan-Peters.  Likewise, had the defense of champerty been raised in the Superior Court and had the assignment been ruled void as champertous, nothing would have prohibited Jackson & Campbell from assigning the judgment to NCRIC anew in the event NCRIC wished to reacquire the judgment for the more limited purpose of obtaining a right of setoff. Columbia Hospital cannot now belatedly attack the assignment as champertous when NCRIC has for years held the J&C Judgment solely for the valid purpose of setoff and collection.  Nevertheless, District of Columbia precedent does not offer clear guidance regarding forfeiture of the defense of champerty, and thus I turn to whether Columbia Hospital is alternatively barred from raising champerty as a defense by failing timely to assert the defense in

this adversary proceeding.

> 5. *Columbia Hospital failed timely to raise the defense of champerty.*

Columbia Hospital waited until the filing of simultaneous opening briefs to assert the affirmative defense of champerty. By first raising the issue in its brief rather than in its complaint, amended complaint, or even in answer to NCRIC's motion for relief from stay, Columbia Hospital failed properly to plead the defense.[29]

NCRIC first advised Columbia Hospital on or about February 13, 2009, that it intended to claim a setoff against the NCRIC Judgment on account of the J&C Judgment. *See* Stip. Facts, ¶ 44. On March 11, 2009, Columbia Hospital commenced this adversary proceeding by the filing of a complaint seeking turnover of the proceeds of the NCRIC Judgment and a declaratory judgment that NCRIC does not have any right of setoff against the NCRIC Judgment. In that regard, Columbia Hospital alleged as follows:

> any setoff right that NCRIC may have acquired by assignment of the J&C Judgment (i) has been waived; (ii) is not enforceable under applicable principles of equity and bankruptcy law; and (iii) even if enforceable, is subordinated to the claims of all secured creditors in this bankruptcy case.

In its prayer for relief, Columbia Hospital asks for a

---

[29] Because the issue was briefed in both the main case and in this adversary proceeding, the court is willing to take a flexible view of how Columbia Hospital could have adequately pled the defense of champerty.

declaratory judgment that "any setoff claim that NCRIC may have
is not enforceable *under the circumstances of this case*."
[Emphasis added.]

Shortly after Columbia Hospital filed its complaint seeking
turnover and declaratory relief, NCRIC filed a motion for relief
from stay in Columbia Hospital's main bankruptcy case in order to
assert its right to setoff against Columbia Hospital's asserted
right to turnover of the NCRIC Judgment (Dkt. No. 139, filed
March 20, 2009).  In its memorandum of law opposing NCRIC's
motion for relief from stay, Columbia Hospital took the position
that NCRIC's claim to setoff should be denied "because NCRIC
should be deemed to have waived it under the circumstances . . .
. "  In support of that position, Columbia Hospital argued that
NCRIC failed to assert the right of setoff arising from the J&C
Judgment during any stage of the NCRIC litigation, and by acting
inconsistently with an intent to enforce its claim to setoff, any
right of setoff should be deemed waived.  Alternatively, Columbia
Hospital urged that the right to setoff ought to be denied on
equitable grounds given NCRIC's failure to assert the right
during the NCRIC litigation, and given that allowing setoff would
unfairly elevate NCRIC's recovery rights over that of other
unsecured creditors.  Nowhere in its brief in opposition to the
lift stay motion did Columbia Hospital take the position that
NCRIC's asserted right of setoff ought to be denied because the

assignment was void.

The lift stay motion was disposed of by way of a consent order under which NCRIC agreed to pay to Columbia Hospital all of the NCRIC Judgment proceeds except for the amount disputed as subject to NCRIC's right of setoff.  Columbia Hospital then filed an amended turnover and declaratory judgment complaint reflecting that NCRIC's right of setoff was the only remaining issue in dispute (Dkt. No. 15, filed May 19, 2009).  In that amended complaint, Columbia Hospital again failed to assert champerty as a basis for denying NCRIC's asserted right of setoff.

Under the summary trial procedures agreed to by the parties, NCRIC and Columbia Hospital submitted simultaneous opening briefs arguing their respective positions on the issue of setoff. Columbia Hospital did not assert its champerty defense until the filing of its opening brief on October 27, 2009 (Dkt. No. 32). Columbia Hospital having previously briefed the setoff issue at length in its opposition to NCRIC's lift stay motion, and having enumerated the bases for objecting to NCRIC's setoff claim in its complaint and amended complaint, NCRIC, not surprisingly, filed an opening brief that did not address the issue of champerty. Indeed, arguing a position is not the same as pleading new grounds for relief, and the court does not think the summary trial procedures were intended to abrogate NCRIC's right to fair notice pleading of the defense.

70

Champerty is an affirmative defense . . . [and] must be
raised in a responsive pleading, not in a memorandum of law in
support of a dispositive motion.  *See Harris v. Sec'y, U. S.*
*Dept. Of Veterans Affairs*, 126 F.3d 339 (D.C. Cir. 1997);
*LNC Invs., Inc. v. First Fid. Bank*, 2000 WL 375236, at *1
(S.D.N.Y. April 11, 2000) ("The defense of champerty falls within
the catchall phrase in Rule 8(c), Fed. R. Civ. P.: 'any other
matter constituting an avoidance or affirmative defense.'"); *but*
*see Turkmani v. Republic of Bol.*, 193 F. Supp.2d 165, 176 n. 10
(D.D.C. 2002) (concluding that the defendant had not waived the
defense of champerty under New York Judiciary Law § 489 by
failing to raise the defense in an answer, in part because § 489
is a criminal statute and public policy weighs against the waiver
of criminal statutes).

Because the setoff dispute arises by way of Columbia
Hospital's declaratory judgment action and champerty is not, as a
technical matter, raised as a defense to an action commenced by
NCRIC, the requirement of Rule 8(c) that all affirmative defenses
must be pled in a responsive pleading is ill-suited to address

the timing of Columbia Hospital's assertion of the defense.[30]

Nevertheless, to the extent Columbia Hospital elected to frame

the dispute by way of a complaint seeking declaratory judgment,

it had an obligation to provide NCRIC fair notice of the defenses

upon which it was relying in seeking that relief in its

complaint.

The liberal notice pleading standards of the Federal Rules

of Civil Procedure apply to affirmative defenses, see *Harris v.

Sec'y, U.S. Dept. Of Veterans Affairs,* 126 F.3d 339, and "an

affirmative defense must include either direct or inferential

allegations respecting all material elements of the claim

asserted, and bare legal conclusions do not suffice."  HSBC

*Mortg. Servs., Inc., v. Equisouth Mortg., Inc.*, 2011 WL 529412,

at *2 (N.D. Ill. Feb. 7, 2011) (internal quotations omitted).

Columbia Hospital's amended complaint makes no allegations

regarding the circumstances of NCRIC's acquisition of the J&C

Judgment, other than to allege the date of the assignment.  As

grounds for denying setoff, the amended complaint alleges simply

that the right of setoff:

---

[30]  With limited exceptions, federal courts regularly
consider the merits of affirmative defenses asserted by way of
declaratory action.  *See BASF Corp. v. Symington*, 50 F.3d 555,
558 (8th Cir. 1995) (finding that dismissal of a declaratory
action brought to assert a statute of limitations defense was
warranted because the declaratory plaintiff was engaged in
improper forum shopping, but noting that when forum shopping is
not a concern, courts regularly consider affirmative defenses
raised by way of declaratory judgment actions) (citing cases).

(i) has been waived; (ii) is not enforceable under
applicable principles of equity and bankruptcy law; and
(iii) even if enforceable, is subordinated to the claims
of all secured creditors in this bankruptcy case and
therefore entitled to no distribution under the terms of
the Chapter 11 plan of liquidation proposed by Columbia
Hospital in this bankruptcy case.

The allegation that the right of setoff is not enforceable under

applicable principles of equity is the closest the complaint

comes to touching on a possible champerty defense.  That

allegation fails adequately to allege all material elements of a

champerty defense.  The defense of champerty was not alleged, and

ought not be permitted as a defense raised at the eleventh

hour.[31]

   6.   *The issue of champerty was not tried by implicit or
        express consent under Rule 15(b) and the rule
        permitting amendment to conform to the evidence does
        not apply.*

Federal Rule of Civil Procedure 15, made applicable to this

proceeding by Fed. R. Bankr. P. 7015, governs the filing of

---

   [31]   In its opposition to NCRIC's motion for relief from stay
filed in the main bankruptcy case, see Mem. at 7-9 (Dkt. No. 147)
there is a discussion regarding the purpose for which NCRIC
acquired the J&C Judgment.  That discussion, however, falls under
the heading of "waiver," and is offered in support of the
proposition that NCRIC has waived any right it may have had to
setoff because NCRIC did not acquire the J&C Judgment for
purposes of setoff, and did not, in fact, attempt to exercise a
right of setoff prior to these proceedings.  Columbia Hospital's
discussion of the purpose of NCRIC's acquisition of the judgment
is also tied into the argument that the court should exercise its
equitable discretion and not permit setoff because that would
elevate NCRIC's setoff claim over claims of other unsecured
creditors.  Even if the court were to construe this filing either
as an answer to NCRIC's asserted claim to setoff or as a
supplement to Columbia Hospital's complaint in this adversary
proceeding, the court concludes that the defense of champerty is
again not adequately pled.  It is not alleged that the setoff
ought to be deemed void by virtue of NCRIC's alleged purpose in
acquiring the judgment (or, alternatively, that NCRIC lacks
standing to assert any rights under the J&C Judgment, *see LNC
Invs., Inc. v. First Fid. Bank*, 2000 WL 375236 (S.D.N.Y. April
11, 2000) (holding that champerty is a subset of the affirmative
defense  of a lack of standing to sue)), and there is no mention
of the consideration paid or the terms of the assignment.  The
court concludes that, even if construed liberally to constitute a
pleading in which Columbia Hospital could properly and timely
plead an affirmative defense, this filing fails adequately to
plead champerty under the notice pleading standards of the
Federal Rules of Civil Procedure.

74

amended pleadings.[32]   The champterty issue was not raised until

after the submission of stipulated facts and exhibits.   The

record having been fully established at that juncture, any

subsequent amendment to the pleadings ought to be treated as

being made during or after trial and thus governed by Rule 15(b).

Under Rule 15(b)(1):

> If, at trial, a party objects that evidence is not within
> the issues raised in the pleadings, the court may permit
> the pleadings to be amended.   The court should freely
> permit an amendment when doing so will aid in presenting
> the merits and the objecting party fails to satisfy the
> court that the evidence would prejudice that party's
> action or defense on the merits.   The court may grant a
> continuance to enable the objecting party to meet the
> evidence.

Rule 15(b)(1) addresses amendments necessitated by the

introduction at trial of evidence relating to issues not raised

in the pleadings.   Rule 15(b)(1) is inapplicable here, however,

because the evidence Columbia Hospital seeks to rely upon in

support of its champerty defense *is* "within the issues raised in

the pleadings" because it is relevant to claims that Columbia

---

[32]   The court notes that "[a] Rule 15 amendment, if allowed
by the trial court, will cure any problem of timeliness
associated with forfeiture . . . .   However, if a party 'waives,'
*i.e.*, intentionally relinquishes or abandons an affirmative
defense, no cure is available under Rule 15." *Material Supply
Intern., Inc. v. Sunmatch Indus. Co., Ltd.*, 146 F.3d 983, 991
(D.C. Cir. 1998).

Hospital *did* adequately plead.[33]   Thus, NCRIC's objection is not

that the evidence falls outside the scope of the pleadings, but

rather that the evidence may not be used to advance a particular

claim that was not adequately pled.

Columbia Hospital likewise cannot argue that an amendment is

appropriate under Rule 15(b)(2), which provides that:

> When an issue not raised by the pleadings is tried by the
> parties' express or implied consent, it must be treated
> in all respects as if raised in the pleadings . . . .

The champerty issue was not tried under Rule 15(b)(2) "by the

parties' express or implied consent" such that under that the

issue "must be treated in all respects as if raised in the

pleadings."   NCRIC did not implicitly or expressly consent at

trial to have the unpled champerty issue tried.   NCRIC's reply

brief, consistent with the record in the case, reflects that when

the stipulated facts and exhibits were submitted, NCRIC was

unaware that the defense of champerty was at issue.   There simply

is not a credible argument to be made that the matter was tried

by consent.   Likewise, although NCRIC's reply brief reaches the

merits of the champerty defense, it does so only after strenuous

objection that the defense was untimely asserted, and in any

---

[33]   Nevertheless, the focus in Rule 15(b)(1) on prejudice to
the opposing party is informative regarding whether leave to
amend should be granted under some other part of Rule 15.   The
court considers the issue of prejudice in its discussion of why
leave to amend would not be granted even if Rule 15(a)'s more
liberal amendment standard applied.

event, addressing an argument in a post-trial brief does not
retroactively render the matter consensually tried.

> 7.    *Even under the liberal standards of Rule 15(a),
> Columbia Hospital cannot amend its complaint at
> this juncture to raise the affirmative defense of
> champerty.*

Rule 15(a) is entitled "Amendments Before Trial," and
Columbia Hospital did not seek leave before trial to amend its
complaint to plead facts adequate to state the defense of
champerty.  Rule 15(a), itself, however, contains no language
restricting the court's power to act only on those amendments
sought before trial, and the title of Rule 15(a) ought not be
controlling.  *See Defender Indus., Inc. v. Nw. Mut. Life Ins.
Co.*, 938 F.2d 502, 508 (4th Cir. 1991) (Rule 15(a) permits courts
to grant leave to amend "when justice so requires," and it was
thus not abuse of discretion to grant leave to amend after close
of evidence absent actual prejudice, bad faith, or futility).

Rule 15(a)(1) provides that parties may amend pleadings as a
matter of course before a response is filed or within 21 days for
a pleading to which no response is appropriate.  *See Harris v.
Sec'y, U.S. Dept. Of Veterans Affairs*, 126 F.3d 339 (D.C. Cir.
1997).  "In all other cases," a party may amend its pleading
prior to trial "only with the opposing party's written consent or
the court's leave [and] [t]he court should freely give leave when

justice so requires."[1]   Rule 15(a)(2).   A district court should
grant leave to amend a complaint "[i]n the absence of any
apparent or declared reason-such as undue delay, bad faith or
dilatory motive on the part of the movant, repeated failure to
cure deficiencies by amendments previously allowed, undue
prejudice to the opposing party by virtue of allowance of the
amendment, futility of the amendment, etc."   *Foman v. Davis*, 371
U.S. 178, 182 (1962), quoted in *Sec'y, U.S. Dept. Of Veterans
Affairs*, 126 F.3d at 344.   Although "[c]ourts should freely give
leave to amend when justice so requires, . . . leave to amend is
not granted automatically . . . . [and] courts may deny leave to
amend if there is an apparent or declared reason for doing so. .
. ." *J.P Morgan Bank v. Drywall Serv. & Supply Co.*, 265 F.R.D.
341, 346 (N.D. Ind. 2010) (internal citations and quotations
omitted).   In the instant proceeding, the court concludes that
even under the liberal standards applicable to motions to amend
under Rule 15(a), given the substantial prejudice to NCRIC in
allowing Columbia Hospital's untimely assertion of the champerty
defense, the court will not grant leave to amend.

(a) Undue Delay and Prejudice

Although "undue delay is a sufficient reason for denying

---

[1] It is the typically the non-moving party's burden to show
why leave to amend should not be granted.   *See LaPrade v.
Abramson*, 2006 WL 3469532, at *3 (D.D.C. Nov. 29, 2006) (citing 3
James Wm. Moore *et al., Moore's Fed. Prac.* § 15.15[3] (3d ed.
1999).

leave to amend . . . , [c]onsideration of whether delay is undue
. . . should generally take into account . . . the possibility of
any resulting prejudice." *Atchinson v. District of Columbia*, 73
F.3d 418, 426 (D.C. Cir. 1996). Establishing undue prejudice
requires a showing that the non-moving party will be "unfairly
disadvantaged or deprived of the opportunity to present facts or
evidence which it would have offered had the amendment [to the
complaint] been timely." *Foremost-McKesson, Inc. v. Islamic
Republic of Iran*, 1988 WL 122568, at *4 (D.D.C. Nov, 8, 1988)
(unpublished) (internal quotations omitted). Here, the court
finds that Columbia Hospital's delay in raising champerty
deprived NCRIC of a fair opportunity to develop and present a
case responsive to the champerty defense, and in doing so, has
prejudiced NCRIC such that amendment ought not be permitted.

Columbia Hospital did not raise its champerty defense until
after the parties agreed to summary trial procedures, and after
the submission of stipulated facts and exhibits establishing the
evidentiary record in this proceeding. NCRIC was not on notice
that it needed to develop an evidentiary record with respect to
Columbia Hospital's champerty defense, and the court can only
speculate how the timely pleading of champerty would have altered
NCRIC's strategy in this litigation, including but not limited to
its willingness to submit to summary trial procedures. *See
Atchinson*, 73 F.3d at 427 (finding well-founded the District

79

Court's concern that prejudice would arise from allowing an untimely amendment to the complaint that, if timely made, would have altered the defendant's litigation strategy).  The prejudice to NCRIC of permitting champerty to be raised for the first time after the close of evidence is thus substantial.[2]

Moreover, the facts underlying this dispute have not changed since the filing of the original or amended complaint, yet Columbia Hospital has not explained its failure to assert champerty until the filing of its trial brief.  This weighs in favor of denying leave to amend.  *See J.P. Morgan Bank,* 265 F.R.D. at 347, 349 (observing that even when the factual basis for a new claim is the same as the factual basis of the original claim, new theories can nevertheless pose unexpected surprise when asserted for the first time in the late stages of litigation); *Anderson v. USAir, Inc.*, 818 F.2d 49, 57 (D.C. Cir.

---

[2]  In deciding whether to grant leave to amend, courts in this circuit also consider "whether amendment of a complaint would require additional discovery . . . ."  *Atchinson v. District of Columbia*, 73 F.3d 418, 426 (D.C. Cir. 1996).  Although the parties have not briefed this issue, the court does not think NCRIC would need to undertake much, if any, additional discovery relating to the champerty defense.  Relevant documents relating to the J&C Assignment are likely to be in NCRIC's possession or control.  As to potential witnesses with knowledge of the circumstances relating to the formation of the assignment agreement, however, the court can only speculate that NCRIC might choose to put on witness testimony.  Under the summary trial procedures, the parties were barred from presenting witnesses.  Thus, although the amendment would not require substantial, if any, additional discovery, it would alter the calculus for whether a conventional trial rather than summary trial is required.

80

1987) (within District Court's discretion to deny motion for leave to amend complaint, which was filed on the same day as the parties' cross-motions for summary judgment, to add additional claims based on facts known prior to the completion of discovery); *Hollinger-Haye v. Harrison W./Franki-Denys*, 130 F.R.D. 1 (D.D.C. 1990) (denying leave to amend complaint to add additional claims based upon facts that were known to plaintiff prior to completion of discovery).

### (b) Bad Faith or Dilatory Motive

The court has no reason to believe that Columbia Hospital's untimely assertion of champerty was motivated by bad faith or was intended to delay proceedings.  Although the court takes this into account as part of its analysis, the lack of improper motive in Columbia Hospital's delay does not outweigh the prejudice to NCRIC in allowing the untimely assertion of the defense.

### (c) Prior Amendments

Before NCRIC answered Columbia Hospital's original complaint, Columbia Hospital filed an amended complaint to reflect a narrowing of the dispute between NCRIC and Columbia Hospital.  Given that the amendment was intended to reflect the narrowing of the dispute rather than to cure a deficiency, and was made as of right under Rule 15(1)(B), the court does not think this factor weighs against Columbia Hospital.  Nevertheless, that Columbia Hospital has not abused the amendment

process does not alleviate the prejudice to NCRIC in allowing the untimely assertion of the defense.  Thus, even if this factor does not weigh against Columbia Hospital, the court does not think that it should be given much weight overall.

### (d) Futility of Amendment

Amending the complaint to add the affirmative defense of champerty would not be futile insofar as the alleged defense would survive a 12(b)(6) challenge.  *See Graves v. United States*, 961 F. Supp. 314, 317 (D.D.C. 1997) ("A motion to amend the complaint should be denied as 'futile' if the complaint as amended could not withstand a motion to dismiss.").  Whether Columbia Hospital would prevail on the merits of such a defense under a fully developed evidentiary record in this proceeding is questionable, but for purposes of the court's *Foman* analysis, it is enough that the amendment would state a valid defense. Although the amendment would not be futile, that is not sufficient to overcome the prejudice that would be visited upon NCRIC in permitting Columbia Hospital to assert its champerty defense out of time.  The court recognizes the importance of deciding cases on the merits, but the need for a fair and level playing field is required to accomplish that end. Notwithstanding that some of the *Foman* factors weigh in Columbia Hospital's favor, on balance, the prejudice to NCRIC arising from Columbia Hospital's undue delay in asserting champerty outweighs

the other factors.  Accordingly, the court concludes that
Columbia Hospital ought not be permitted to amend its complaint.


      8.    *Columbia Hospital cannot resort to Rule 54(c) to cure
          the failure to plead champerty.*

The court is also mindful of Rule 54(c), made applicable to
adversary proceedings by Rule 7054(a), which provides:

> Demand for Judgment; Relief to be Granted.  A default
> judgment must not differ in kind from, or exceed in
> amount, what is demanded in the pleadings.  Every other
> final judgment should grant the relief to which each
> party is entitled, even if the party has not demanded
> that relief in its pleadings.


Rule 54(c) instructs courts to grant the relief to which a
party has a demonstrated entitlement even if the party failed to
demand that relief in its pleadings.  In so providing, "Rule
54(c) ensures that substance will prevail over form."  10 Moore's
Federal Practice § 54.72 (3d ed. 2011).  Rule 54(c) cannot,
however, be used to cure a failure to plead a claim, nor can it
provide a basis for granting relief on an issue as to which the
party has not prevailed on the merits.  As observed in Moore's
Federal Practice,

> Rule 54(c) permits the awarding of all available relief
> on a claim when liability on the claim has been
> established. . . .  Similarly, whatever relief is awarded
> under Rule 54(c) must be supported by the pleadings and
> proof offered.  The Rule permits relief not demanded only
> when the party affirmatively shows an entitlement to the
> relief and is inapplicable when the pleader fails to
> demonstrate the proper substantive grounds for relief.
> Relief may not be granted, therefore, on an issue not

> properly presented to the court for resolution.  Because
> Rule 54(c) restricts courts from ordering undemanded
> relief unless it is on a claim already proven, the Rule
> does not permit an imposition of liability on an omitted
> claim on the basis of the record in the action.  If the
> claimant proves all of the elements of a claim, however,
> any available remedy may be ordered, notwithstanding the
> plaintiff's error in designating the claim in the
> pleadings.  Legal error in identifying the source of the
> claim is not fatal so long as all of the elements of the
> claim are proven.

10 Moore's Federal Practice § 54.72 (3d ed. 2011) (footnotes

omitted).

Rule 54(c) does not address what happens at the conclusion

of trial when the plaintiff has failed under Rule 8(a)(2) to

plead "a short and plain statement of the claim showing that the

pleader is entitled to relief."  Instead, Rule 54(c) addresses

what happens at the conclusion of trial when the plaintiff has

failed under Rule 8(a)(3) to plead "a demand for the relief

sought . . . ."  Thus, had Columbia Hospital adequately pled the

elements of a champerty defense under Rule 8(a)(2) in its

complaint, but simply failed to include in its demand for relief

a request that the assignment be declared void on that basis,

Rule 54(c) might be available to cure the omission, unless NCRIC

could show prejudice.[3]  Columbia Hospital's complaint did not
just fail to demand relief consistent with a claim for champerty,
however.  Instead, it failed adequately to plead the elements of
the defense in accordance with Rule 8(a)(2), a more fundamental
pleading omission.  As such, Columbia Hospital cannot rely on
Rule 54(c) to overcome its failure timely to plead champerty.

Similarly, under Rule 54(c), a party may only seek the
relief to which it is entitled, and regardless of whether
Columbia Hospital adequately pled champerty, the court has not
made findings of fact and law sufficient to support a ruling that
champerty applies.  NCRIC was not on notice that Columbia
Hospital was asserting champerty until after the close of
evidence, and was not given a fair opportunity to develop the
record with respect to this issue.  Accordingly, the court
declined to evaluate the evidence as it relates to champerty.  In

---

[3]   Even if the court found that Columbia Hospital had
successfully shown that the J&C Assignment was champertous, and
even if Columbia Hospital could persuade the court that buried
somewhere in the complaint are allegations sufficient to support
a champerty claim, the prejudice to NCRIC in permitting Columbia
Hospital to now rely on this defense without having actually
demanded that the assignment be declared void as champertous
would arguably be grounds for denying relief under Rule 54(c).
See 10 Moore's Federal Practice § 54.72 (3d ed. 2011) ("[i]f . .
. the failure to specifically request a particular form of relief
prejudices the opposing party in its defense of the claims
asserted, granting that relief under Rule 54(c) is improper.")
(citing Albermarle Paper Co. v. Moody, 422 U.S. 405, 432-25
(1975); Atl. Purchasers, Inc. v. Aircraft Sales, Inc., 705 F.2d
712, 716-17 (4th Cir. 1983); In re Rivinius, Inc., 977 F.2d 1171,
1177 (7th Cir. 1992)).

summary, it is not just a defect in the demand for relief that

prevents the court from declaring the J&C Assignment champertous;

rather, Columbia Hospital is not entitled to relief under Rule

54(c) because it has not successfully pled or demonstrated the

elements of champerty.


## III

An order follows.


[Signed and dated above.]

Copies to: All counsel of record; Office of United States
Trustee.